# EXHIBIT A

Milord A. Keshishian, SBN 197835
milord@milordlaw.com
Stephanie V. Trice, SBN 324944
stephanie@milordlaw.com
Jordan M. Zim, SBN 332757
jordan@milordlaw.com
MILORD & ASSOCIATES, P.C.
10517 West Pico Boulevard
Los Angeles, California 90064
Tel: (310) 226-7878

Attorneys for Plaintiff
Beyond Blond Productions, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, a California limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD HELDMAN III, an individual; COMEDYMX, INC., a Nevada corporation; COMEDYMX, LLC, a Delaware limited liability company; and DOES 1-10;<br><br>Defendants. | Case No.: 2:20-cv-05581 DSF (GJSx)<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>1. **17 U.S.C. § 512(f) Misrepresentation**<br>2. **Declaration of Copyright Invalidity, Unenforceability, and Non-Infringement**<br>3. **Trademark Invalidity, Unenforceability, and Non-Infringement**<br>4. **15 U.S.C. § 1125(a) False Advertising/Product Disparagement**<br><br>**JURY TRIAL DEMANDED** |

**THIRD AMENDED COMPLAINT**

Plaintiff BEYOND BLOND PRODUCTIONS, LLC ("Beyond Blond") sues Defendants EDWARD HELDMAN III ("Heldman"), COMEDYMX, INC. ("Com-Inc."), and COMEDYMX, LLC ("Com-LLC"), collectively referred to as "ComedyMX," and DOES 1-10 and alleges:

## INTRODUCTION

ComedyMX has a history of issuing bad-faith Digital Millennium Copyright Act ("DMCA") takedown notices over cartoon classics, works that are in the public domain, and sham intellectual property rights it does not possess. ComedyMX has previously been sued in this District for similar bad-faith takedown notices, and has even been sued for copyright infringement. Despite its unclean hands, ComedyMX has also sued other third parties for issuing takedown notices against ComedyMX's distribution of public domain works. During the COVID-19 pandemic while consumers were sheltering at home and viewing Beyond Blond's compilation of public domain cartoon classics, ComedyMX devised another bad-faith takedown scheme to usurp Beyond Blond's viewers by forcing Amazon to disable six of Beyond Blond's videos. When called to task to prove ComedyMX's prenotification investigation of copyright infringement to support good faith takedown notices, ComedyMX's counsel could only muster up a false claim that its copyright registration covered its generic "cartoon classics" words displayed on the screen, which it also claimed to be its trademark despite being merely generic. Because Amazon refused to enable Beyond Blond's video content based on its counternotification, it is left with no other choice but seek the Court's intervention to prevent ComedyMX's knowingly material misrepresentation.

## THE PARTIES

1.      Plaintiff Beyond Blond is a California limited liability company having a principal place of business in Los Angeles, California.

2.      Defendant Heldman is an Arizona resident, but does business in and with the State of California and, in particular, within this District, including filing a currently

pending lawsuit against his former counsel for malpractice in an underlying case where Heldman was countersued for filing a false DMCA takedown notice, styled *Heldman v. Zerner*, Case 2:19-cv-08185-GW-PJW (C.D. Cal. 2019).  Heldman contracted with counsel in Pasadena, California to represent him, Com-Inc., and Com-LLC in the *Zerner* matter, subjecting himself to jurisdiction in this District.  At all relevant times, Heldman was the active driving force behind the improper conduct of the ComedyMX entities, including filing the false and bad faith takedown notices wherein he knowingly materially misrepresented that Beyond Blond infringed a trademark and/or copyright.  In filing the false and bad faith takedown notices, Heldman agreed to be bound by the jurisdiction of the district courts where Beyond Blond resides, i.e., the Central District of California, and he was the key decision maker in filing the false takedown notices in bad faith as they were objectively and subjectively baseless.  Heldman was also the driving force and decision maker in retaining Los Angeles, California based counsel to file, in this District, a false DMCA takedown claim in the case styled *ComedyMX LLC v. Broadbandtv Corp., et al.*, Case 2:20-cv-00260-SVW-JPR (C.D. Cal. 2020).  Heldman was also the driving force and decision maker in retaining Los Angeles, California based counsel to file, in this District, a trademark infringement claim in the case styled *ComedyMX LLC v. Weliver*, Case 2:20-cv-01947-RGK-PVC (C.D. Cal. 2020).

3.     Defendant Com-LLC is a Delaware limited liability company, and lists its principal place of business at a P.O. Box in New Jersey.  At all relevant times, Com-LLC conducted business in California and, specifically, in this District, including by being a party to all the litigation recited above.  In filing the false takedown notices, Com-LLC agreed to be bound by the jurisdiction of the district courts where Beyond Blond resides, i.e., the Central District of California.  Heldman alone controls Com-LLC and is the active force behind its improper conduct alleged herein.

4.     Defendant Com-Inc. is a Nevada corporation, and lists its principal place of business in Carson City, Nevada.  Heldman is listed as Com-Inc.'s president, secretary, treasurer, and director and is the active force behind all of its improper conduct.  At all

**THIRD AMENDED COMPLAINT**

relevant times, Com-Inc. conducted business in California and, specifically, in this District, including by being a party to the currently pending *Zerner* litigation recited above and *ComedyMX, Inc. v. St. Clair, et al.*, Case 2:16-03249-AGR (C.D. Cal. 2016). In filing the false takedown notices, Com-Inc. agreed to be bound by the jurisdiction of the district courts where Beyond Blond resides, i.e. the Central District of California. Heldman alone controls Com-Inc. and is the active force behind its improper conduct alleged herein.

5.     Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have contributed to the false takedown notice filings, or have engaged in one or more of the wrongful acts alleged herein.  The true names, whether corporate, individual, or otherwise of DOES 1 through 10, inclusive, are presently unknown to Beyond Blond, and therefore, are being sued by such fictitious names, and Beyond Blond will seek leave to amend this Complaint to include their true names and capacities when the same have been ascertained.

6.     Beyond Blond is informed and believes, and on that basis alleges, that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Beyond Blond's rights and the damages to Beyond Blond proximately caused thereby.

7.     Beyond Blond is informed and believes, and on that basis alleges, that at all times relevant to this action there existed, a unity of interest and ownership between the Business Entity Defendants, Com-Inc. and Com-LLC, and Individual Defendant Heldman that any individuality and separateness of the Business Entity Defendants ceased or never existed, and each of the Business Entity Defendants is the alter ego of

**THIRD AMENDED COMPLAINT**

Individual Defendant Heldman.

8.      Beyond Blond is informed and believes, and on that basis alleges, that at all times relevant to this action there existed, a unity of interest and ownership between the Business Entity Defendants, Com-Inc. and Com-LLC that any individuality and separateness of the Business Entity Defendants ceased or never existed, and each of the Business Entity Defendants is the alter ego of the other.

## JURISDICTION AND VENUE

9.      This action arises under the laws of the United States and the Copyright Act of 1976 (17 U.S.C. § 101, *et seq.*) and Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125, and as such, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

10.     The Court has personal jurisdiction because Defendants engaged in multiple intentional acts of filing false takedown notices and engaging in Lanham Act unfair competition expressly aimed at California and this District, which have caused harm to Beyond Blond in this District.  Defendants, by filing false takedown notices, agreed to jurisdiction in the district courts of Beyond Blond's principal place of business. Defendants were fully aware of Beyond Blond's rights and its principal place of business within this District.  Defendants are subject to jurisdiction in this District because they transact substantial business in California and this District, including:

(a)     marketing, selling, and delivering a substantial amount of the videos at issue in the state of California and this District, thereby purposefully engaging businesses and consumers in California for their own commercial gain;

(b)     engaging distributors and retailers in this District to distribute the videos, including YouTube, and using Defendants' websites to direct consumers to distributors located in this District; and

(c)     engaging counsel in this District to file numerous lawsuits in this

**THIRD AMENDED COMPLAINT**

District.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b), (c), and 1400(a) because Defendants conduct regular business in this District by advertising, selling, promoting, and directing videos to consumers in this District, filing and maintaining numerous lawsuits in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

12.    Beyond Blond is a woman owned small business that nimbly and efficiently helps content owners leverage their music and video catalogs into new and different product offerings for digital distribution.

13.    Beyond Blond uses its established relationships with top digital providers, like Amazon and Google, to help conform the works to platform specifications, as well as create targeting metadata and artwork for effective conversion rates.

14.    Beyond Blond, for its own business, also acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms, including Amazon.com's Prime Video Direct.

15.    Beginning in late 2016 and/or early 2017, Beyond Blond acquired BetaSP tapes and other sources of cartoon classics, including Bugs Bunny, Popeye, and Mighty Mouse, and began digitizing and editing the same with a deck captured to a computer. The cartoon classics compilations were then formatted to comply with Amazon Video streaming specifications.  The cartoon classics compilations where then uploaded to Amazon Video on the corresponding dates:

**THIRD AMENDED COMPLAINT**

| | |
|---|---|
| Cartoon Classics #1 | February 17, 2017 |
| Cartoon Classics #2 | February 28, 2017 |
| Cartoon Classics #3 | April 14, 2017 |
| Cartoon Classics #4 | August 18, 2017 |
| Cartoon Classics #5 | February 16, 2018 |
| Cartoon Classics #6 | May 17, 2019 |
| Patriotic Cartoon Classics | May 25, 2017 |

16.    Beyond Blond's quality digitization became popular with viewers seeking to watch cartoon classics and Beyond Blond began receiving substantial revenue from Amazon for customers streaming, renting, and purchasing videos.

17.    Defendants are Beyond Blond's direct competitors who create compilations of cartoon classics and stream the same on video hosting platforms.  Defendants' videos are of inferior quality and have received negative reviews, whereas Beyond Blond's videos have received positive reviews.

18.    Beginning on or around December 26, 2006, Defendant Heldman, on behalf of all Defendants, began his anonymous and surreptitious unfair competition campaign to publish negative reviews against direct competitors on Amazon.  Using the anonymous Amazon user name "tvideos,"  Heldman published negative reviews directing consumers to Defendants' own products on the internet while simultaneously disparaging his competitors'.

19.    Defendants' conduct has continued unabated and on September 10, 2017, Defendants posted a "one-star" review of Beyond Blond's video, "Cartoon Classics #2" on Amazon.  The review states, "BB Productions PD Junk Found on YouTube.  BB Productions dishes out a bunch of low quality PD, nothing you can't get from YouTube or cheap DVDs.  It must be some guy who has to [sic] much time on his hands as Prime viewing for PD isn't going to make anyone rich and no real company called 'BB Productions'.  Anyone who uses the word 'productions' is some small nobody.  Again just common low quality quick buck PD."  A true and correct copy of Defendants'

**THIRD AMENDED COMPLAINT**

September 10, 2017 review is attached hereto as **Exhibit A** and reproduced below.



20.     Defendants' statements were made in bad faith because the statements were intended to direct Beyond Blond's existing and prospective customers away from Beyond Blond's videos and toward Defendants' own videos and DVD sales online.  To that end, Heldman provided five-star raving reviews for his own cartoon classics offerings on Amazon, while arguing against one-star reviews provided by true consumers against Heldman's videos.  Defendants' statements promoting their videos while disparaging competitors' videos were made in violation of Amazon's customer review policy mandating: "The following are types of reviews that we don't allow and will remove: A review by someone who has a direct or indirect financial interest in the product . . . A negative review from a seller on a competitor's product."

We don't allow anyone to write reviews as a form of promotion.

The following are types of reviews that we don't allow and will remove:

- A review by someone who has a direct or indirect financial interest in the product.
- A review by someone perceived to have a close personal relationship with the product's owner, author, or artist.
- A review by the product manufacturer, posing as an unbiased shopper.
- Multiple negative reviews for the same product from one customer.
- A review in exchange for monetary reward.
- A review of a game in exchange for bonus in-game credits.
- A negative review from a seller on a competitor's product.
- A positive review from an artist on a peer's album in exchange for receiving a positive review from them.

You can see all of your reviews by visiting Your Profile.

21.     On February 21, 2020 – almost two-and-a-half years after Heldman became

**THIRD AMENDED COMPLAINT**

aware of Beyond Blond's cartoon classics videos, to further unfairly compete with Beyond Blond, Defendant Heldman, on behalf of Defendant Com-LLC, authorized his counsel to send a takedown notice to Amazon to remove Beyond Blond's videos for alleged trademark infringement based on its pending trademark application, which Amazon rejected because Com-LLC and Heldman did not own any registered trademarks.

22.     On February 29, 2020, and March 30, 2020, as part of his anonymous and surreptitious campaign of false advertising and unfair competition, when Heldman realized people would be stuck at home streaming videos during the COVID-19 pandemic, Defendant Heldman devised a scheme to send baseless DMCA takedown notices himself to Amazon, not through its normal reporting channels for content appearing on Amazon, but using the abuse@amazonaws.com email intended for content appearing on third-party websites hosted on Amazon servers.  True and correct copies of the correspondence is attached hereto as **Exhibits B** and **C**.

23.     Heldman's scheme also included disguising Defendants' trademark infringement claim as a DMCA claim, baselessly asserting that Defendants' Performing Arts copyrights, registered by Com-Inc., protected their generic "cartoon classics" term using off-the-shelf font and third-party eye design, yet still citing Defendants' pending trademark application serial number.  After this lawsuit was filed, Heldman also issued a follow up takedown notice on July 21, 2020 for "Patriotic Cartoon Classics," which Amazon had not taken down in response to his March 30, 2020 correspondence.  Despite Defendants' threat of imminent litigation if the video was not taken down, Defendants did not sue and the video remained live for nearly four months demonstrating Defendants' communications did not relate to imminent litigation that is contemplated in good faith and under serious consideration.  Amazon took down the seven videos, issuing

the following case numbers:

| | |
|---|---|
| Cartoon Classics #1 | 6890999701 |
| Cartoon Classics #2 | 6891043541 |
| Cartoon Classics #3 | 6891006641 |
| Cartoon Classics #4 | 6890994521 |
| Cartoon Classics #5 | 6891030291 |
| Cartoon Classics #6 | 6891048961 |
| Patriotic Cartoon Classics | 7205014561 |

24.     The takedown notices were objectively and subjectively meritless and in bad faith because the cartoon classics videos were obtained from the public domain and could not have infringed Defendants' copyrights as they were independently compiled.

25.     On March 20, 2020, Beyond Blond contacted Defendant Heldman at the email address provided by Amazon as the intellectual property claimant.  Instead of responding, Defendant Heldman forwarded the email to his counsel who asked for Beyond Blond's counsel to contact him.

26.     On March 26, 2020, Beyond Blond's counsel responded to Defendants' counsel asking for the copyright registrations and deposit materials forming the basis of the takedown notices, in addition to Defendants' "pre-notification investigation report identifying (1) the protectible elements in [Defendants'] work, and (2) the substantial similarity in the protectible elements of the copyrighted works and [Beyond Blond's] accused works."  A true and correct copy of the correspondence is attached as **Exhibit D**.

27.     On March 26, 2020, Defendants' counsel responded to inquiries regarding the intellectual property supporting the takedown notices by alleging that COM-LLC is the owner of a cartoon classics logo design trademark application, Application Serial No. 88/789,484 ("the '484 Application") filed six weeks earlier.  Counsel for Defendants threatened trademark litigation if Beyond Blond did not cease us of the term cartoon classics, but only provided information regarding "U.S. Copyright No. PAu003798644," omitting the additional copyright registrations forming the takedown notices.  A true and

**THIRD AMENDED COMPLAINT**

correct copy of the correspondence is attached as **Exhibit E**.

28.    On March 26, 2020 Defendants' counsel also claimed that Defendants' logo design was registered as a copyright under U.S. Copyright Reg. No. PAu003798644 ("the '644 Registration") to Defendant Com-LLC.  Counsel threatened copyright infringement litigation if Beyond Blond did not cease use of the term cartoon classics.  *See* **Exhibit E**.

29.    On March 27, 2020, Beyond Blond's counsel responded pointing out the meritless nature of Defendants' infringement position.

(a)    Beyond Blond informed Defendants that the '644 Registration is a Performing Arts copyright registration and only covers "(1) musical works, including any accompanying words; (2) dramatic works, including any accompanying music; (3) pantomimes and choreographic works; and (4) motion pictures and other audiovisual works."  It does not cover logos, and the purported cartoon classics logo was not and could not be listed as a protectible element on the '644 Registration.  Because Defendants failed to provide the registration certificate and the deposit material, Beyond Blond had to rely on the Copyright Office's search result page.  Further, Defendants were informed that, assuming arguendo, they were entitled to copyright protection, the scope of copyright would be thin and weak and there is no similarity between Defendants' and Beyond Blond's use of cartoon classics in a generic manner.

(b)    Defendants received legal authority establishing that the words "cartoon classics" are generic and not protectable under trademark law and the addition of the eyes was not original and a mere copy of preexisting clip art.  Further the generic uses were so dissimilar, not trademark infringement could be found.  A true and correct copy of

**THIRD AMENDED COMPLAINT**

the March 27, 2020 correspondence is attached as **Exhibit F**.



**DEFENDANTS**



**BEYOND BLOND**

30.    On March 27, 2020 Defendants were also informed that the term "cartoon classics" is generic and unprotectable as a trademark because it is used in the industry to refer to cartoon classics, a genre of older cartoons.  Defendants were also provided examples of the generic use of cartoon classics in the industry.  *See* **Exhibit F**.

31.    Despite the evidence provided proving the baseless nature of Defendants' infringement claims to Amazon, Defendants refused to retract their takedown notices.

32.    On March 31, 2020, Beyond Blond filed counter-notices requesting six of its seven baselessly accused videos be restored, but Amazon refused to do so unless Defendants withdrew their notices of infringement.  Notwithstanding Defendants' threat of imminent litigation if the videos were not taken down, one of Beyond Blond's videos remained live for nearly four months after Defendants served the takedown notices and Defendants still did not file a lawsuit.

33.    Defendants refused to withdraw their notices of infringement and Beyond Blond spent almost two months in Amazon Legal purgatory appealing Amazon's position.  Beyond Blond finally received a response to its appeal on May 19, 2020 that the six videos would not be restored unless Defendant Heldman withdrew the six infringement notices or without a court order.  Defendants refused to withdraw the baseless infringement takedown notices, including the seventh one filed later.

34.    Contrary to the Court's finding in the Anti-SLAPP order, Defendants were not engaged in the appeals process with Amazon and could have immediately sued

**THIRD AMENDED COMPLAINT**

Beyond Blond for infringement.  Instead of acting on its imminent threat of litigation, Defendants used the opportunity to do nothing, effectively securing an extrajudicial injunction knowing that they would be unable to secure an injunction in court.  Indeed, Beyond Blond had to institute this lawsuit once Amazon indicated that it would not restore the content.  In fact, Defendants did not bring any claims against Beyond Blond until September 9, 2020, in Defendants' response to Beyond Blond's initial complaint in this action.  Nor did Defendants file a preliminary injunction motion until almost a year later after the Court ordered withdrawal of Defendants' baseless takedown notices. Defendants never contemplated imminent litigation in serious consideration and in good faith.

35.     In addition to alleging infringement of the '644 Registration, Defendants subsequently declared to this Court that Beyond Blond also infringed Copyright Registration Nos. PAu003986151 ("the '151 Registration") and PAu003801793 ("the '793 Registration"), both owned by Defendant Com-Inc., as well as PAu003921426 ("the '426 Registration") owned by Defendant Com-LLC.

36.     But Defendants concealed from the Court and Beyond Blond – without the benefit of discovery – that Heldman's takedown notices to Amazon were also baselessly based on Copyright Registration Nos. PAu003803401 ("the '401 Registration"), PAu003801795 ("the '795 Registration"), PAu003801911 ("the '911 Registration"), and PAu003803308 ("the '308 Registration").  Defendants' eight copyright registrations shall be referred to collectively as "Defendants' Copyright Registrations."

37.     Defendant Com-LLC filed the '484 Application at the USPTO on February 7, 2020 and was forced to disclaim any "EXCLUSIVE RIGHT TO USE 'CARTOON CLASSICS' APART FROM THE MARK **AS SHOWN**." (emphasis added).  Thus, Defendants were fully aware that they did not have the right to exclude others from using the generic cartoon classics term on competing products.

38.     Further Defendants also conceded that the "mark consists of the words 'CARTOON CLASSICS!' Appearing (sic) in a *stylized font* where the 'O's in

'CARTOON' appear as two stylized eyes." (emphasis added).  Based on all these disclaimers, Defendants knew the generic term "cartoon classics" and the modification of the "OO" letters were not protectible, yet baselessly issued a takedown notice which is objectively and subjectively baseless and in bad faith because – assuming any protectible mark – the designs look nothing alike, let alone showing exact copying of the stylization, and confusion is unlikely.  Defendants also concealed from the Trademark Examiner that the mark was not stylized, but used off-the-shelf font and copied clipart for the eyes.

39.     Amazon's "Report Infringement" page, https://www.amazon.com/report/infringement, allows the rights owner to select only one type of intellectual property as the basis of infringement, even though an accused party may be infringing more than a single form of intellectual property.  Here, although Defendants are accusing Beyond Blond of infringing both its copyright and trademark, Amazon only allows one type of intellectual property to be selected.  On information and belief, Defendants selected "trademark concerns," despite lacking federal trademark registration, which would not have allowed them to also include the copyright infringement claim that Defendants and counsel threatened involving the Defendants' Copyright Registrations.

40.     Defendants' misconduct in their false and baseless takedown notices are a direct and proximate cause of damage to Beyond Blond because Amazon relied on those bad faith notices and disabled Beyond Blond's seven videos and, on information and belief, issued strikes against Beyond Blond's account.  Thus, Beyond Blond has lost its revenue stream from viewers who rented, purchased, and/or streamed the seven videos on Amazon's Video Direct platform.

41.     As a result, Beyond Blond faces devastating, irreparable harm to its business due to Defendants' misconduct.  There is an actual and justiciable controversy between the parties concerning infringement by Beyond Blond's use of the generic cartoon classics term on its videos of cartoon classics and Defendants' purported trademark

**THIRD AMENDED COMPLAINT**

rights.

42.     As a result, Beyond Blond faces devastating, irreparable harm to its business due to Defendants' misconduct.  There is an actual and justiciable controversy between the parties concerning infringement by Beyond Blond's use of the generic cartoon classics term on its videos of cartoon classics and Defendants' purported copyrights and trademark rights.  Defendants have not withdrawn their claims of copyright infringement and have alleged that they can pursue copyright infringement claims against Beyond Blond's seven videos at issue for infringing Defendants' Copyright Registration in the future.

## **FIRST CAUSE OF ACTION**

Misrepresentation of Copyright Claims Under the DMCA

(17 U.S.C. § 512(f))

43.     Plaintiff hereby realleges and incorporates the allegations in paragraphs 1 through 17, 21 through 29, 31 through 36, 39, and 42 of this Complaint as if fully set forth herein.

44.     Section 512(f) of the Copyright Act provides, in relevant part, that "any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ."

45.     Defendants' DMCA notices, submitted by Defendant Heldman on behalf of Defendants Com-Inc. and Com-LLC, are false and were false at the time they were filed because Defendants falsely represented that they owned copyrights in the unprotectable logo for the generic cartoon classics term and knew that Beyond Blond could not infringe Defendants' Copyright Registrations, which do not and cannot protect a logo. Defendant Heldman, on behalf of all Defendants, represented in the DMCA notices,

-15-

**THIRD AMENDED COMPLAINT**

under penalty of perjury, that Beyond Blond's seven videos infringed the work covered by Defendants' Copyright Registrations.  Further, Heldman issued the takedown notice on behalf of COM-Inc., when some of Defendants' Copyright Registrations are owned by COM-LLC.

46.    On March 27, 2020, Defendants received notice in writing that the DMCA notices were false and in bad faith and that Defendants held no copyrights in the logo and that the copyrights were not and could not be infringed.  *See* **Exhibit F**.  Defendants were requested to withdraw the baseless and meritless notices of infringement to Amazon, but Defendants refused.

47.    At the time Defendants filed the DMCA takedown notices with Amazon.com, and certainly after they received the March 27, 2020 correspondence attached as **Exhibit C**, they could not have reasonably believed that they had any copyrights to the logo, standing, or that Beyond Blond infringed.  Additionally, after receiving Beyond Blond's preliminary injunction motion, Defendants could not have reasonably believed that Patriotic Cartoon Classics infringed any of their trademarks or the eight copyrights at issue.

48.    By filing the DMCA notices with and refusing to withdraw the same from Amazon.com, Defendants knowingly misrepresented that Beyond Blond was infringing, in violation of 17 USC section 512(f), entitling Beyond Blond to damages for the removal or disabling of access to its seven cartoon classics videos.

49.    As a result of Defendants' wrongful conduct as herein alleged, Beyond Blond has been damaged in a sum, the exact amount of which is unknown to Beyond Blond at this time, and Beyond Blond will provide same during the pendency of this matter when ascertained.

## SECOND CAUSE OF ACTION

(Declaration of Copyright Invalidity, Unenforceability and Non-Infringement)

50.    Plaintiff hereby realleges and incorporates the allegations in paragraphs 1

through 17, 21 through 29, 31 through 36, 39, and 42 through 49 of this Complaint as if fully set forth herein.

51.     There is an actual, substantial, and continuing justiciable controversy between Beyond Blond and Defendants regarding the validity, enforceability, and non-infringement of Defendants' Copyright Registrations and Beyond Blond's ability to use and display the seven videos along with the generic cartoon classics term.

52.     Beyond Blond alleges that Defendants' Copyright Registrations are invalid and unenforceable because the copyrights do not protect the cartoons classic logo, which consists of common geometric shapes, unprotectable eyes from the public domain, font copied from the public domain, and is not copyrightable subject matter.  Beyond Blond's independently created seven videos do not infringe Defendants' Copyright Registrations. Defendants' Copyright Registrations are also invalid because they were filed for an unpublished collection, but the individual works within the collection were previously published.  On information and belief, although each registration is for an unpublished collection, the various cartoons listed in each application were previously published by Defendants for sale on their website www.8thmandvd.com, and for rent or purchase on Amazon prior to the registration dates of Defendants' Copyright Registrations. Therefore, Beyond Blond is entitled to a judicial declaration that Defendants' Copyright Registrations are invalid, unenforceable, and not infringed.

53.     Beyond Blond is entitled to a judicial determination that Beyond Blond's seven videos and use of the generic cartoon classics term plus eye design to make available for distribution and viewing of its accused seven videos and the depiction cartoon classics has not infringed, does not infringe, and would not infringe, either directly or indirectly, any valid, enforceable and/or protectable expression in the Defendants' Copyright Registrations because (1) Counter-Defendant has not alleged access; (2) the Registrations cannot cover a generic logo; (3) common geometric shapes, and eyes from the public domain and pre-existing third party artwork are not protectable because they were copied; and (4) Beyond Blond's accused seven videos and cartoon

**THIRD AMENDED COMPLAINT**

classics depiction are neither substantially similar nor virtually identical to protectable elements in Defendants' Copyright Registrations.  Thus, Defendants allegations of copyright infringement are a sham and in bad faith.

### THIRD CAUSE OF ACTION

(Trademark Non-Infringement, Invalidity and Unenforceability)

54.     Beyond Blond hereby realleges and incorporates the allegations in paragraphs 1 through 17, 21 through 23, 25 through 27, 29(b), 30 through 33, and 37 through 41 of this Complaint as if fully set forth herein, but specifically excludes any allegations related to copyrights and the DMCA.

55.     Beyond Blond seeks declaratory relief from this Court to prevent Defendants from hindering competition by monopolizing a commonplace and generic term and generic design for their own exclusive use.

56.     Not only did Defendants concede that the term cartoon classics is generic in their trademark application by disclaiming the exclusive right to use same apart from the specific font design, but their own listings for the cartoon classics on Defendants' YouTube.com channel establishes the term is generic:



57.     Looney Tunes is a registered trademark of Warner Bros. Entertainment, Inc. and "cartoon classics" is the generic term for Warner's older cartoons that are mostly in the public domain.  Defendants' use of "cartoon classics" is thus generic for the genre of

**THIRD AMENDED COMPLAINT**

cartoons it has compiled when generically identifying the video as "Looney Tunes Cartoon Classics."

58.     Long prior to Defendants' illicit attempt to monopolize the generic term "cartoon classics" with a generic design that merely uses public domain font and copied clipart eyes, many third parties adopted and used that term alone or with cartoonish designs in a generic sense.  Because the dominant portion of Defendants' use of cartoon classics is the term itself along with copied public domain font and clipart eyes, the entirety of its use is generic and cannot function as a source indicator.

59.     Defendants accused Beyond Blond of infringing Defendants' alleged common law trademark rights in the term cartoon classics plus design based on Beyond Blond's use of the generic term cartoon classics in conjunction with common, generic and widespread use of public domain font and clipart eyes.

60.     Defendants' use of the generic term cartoon classics in combination with cartoon eyes for the "oo" letters in cartoon does not constitute trademark use and is not a source identifier, especially because they merely copied public domain Freestyle Script font and clipart eyes.

61.     As can be discerned from the screenshot above, Defendants use the related 8thmandvd.com® trademark to indicate source and the cartoon classics generic term to inform viewers of the type of video shown, i.e., cartoon classics.  8thManDVD.com was registered with the USPTO on October 11, 2016 and awarded Registration No. 5,059,117.  8thManDVD.com owns Defendants' YouTube channel where competing videos are streamed, and the registered trademark 8thManDVD.com is shown in close proximity to and in conjunction with Defendants' generic term "cartoon classics" plus design.  Because the 8thManDVD.com registered trademark is related to the pending '484 Application, Beyond Blond requests that this Court order the Defendants to abandon the '484 Application and any and all applications to register any mark with the words cartoon classics, or anything confusingly similar thereto per 15 U.S.C. §1119, which provides courts jurisdiction to "otherwise rectify the register with respect to the

registrations of any party to the action."

62.    Therefore, Defendants cannot claim exclusive rights to use the generic term cartoon classics alone or in combination with a simple design that is ubiquitous and generic in the industry.

63.    Because of the generic nature of the "cartoon classics" term and generic copied design, and the different styles in which the generic terms are presented and used, Beyond Blond does not and cannot infringe Defendants' nonexistent trademark rights in the generic cartoon classics term and generic design.

64.    Beyond Blond will be damaged by Defendants' continued assertion that it has trademark rights in the generic term cartoon classics plus design unless the Court declares it has no such rights and orders Defendants to abandon the '484 Application.

65.    Beyond Blond has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

False Advertising/Trade Libel/Product Disparagement

(15 U.S.C. § 1125(a))

66.    Beyond Blond hereby realleges and incorporates the allegations in paragraphs 1 through 25, 27, 29(b), 30 through 34, 37 through 41, and 54 through 65 of this Complaint as if fully set forth herein, but specifically excludes any allegations related to copyrights and the DMCA.

67.    Defendants used the anonymous Amazon account "tvideo" to mislead Beyond Blond's existing and prospective customers by instructing the existing and prospective customers to purchase or view the content from Defendants instead of from Beyond Blond.  Defendants published their statements to Beyond Blond's existing and prospective customers on Amazon constituting false advertising and product disparagement under the Lanham Act.  Indeed, Defendants achieved their goal of misleading consumers because consumers indicated that they found Defendants' false and biased review to be useful.

THIRD AMENDED COMPLAINT

68.     Defendants' statement is false because Defendants used Amazon as a device to communicate with Beyond Blond's existing and prospective customers.  Defendants' communication mislead Beyond Blond's existing and prospective customers into believing that the review was coming from a genuine reviewer and not Beyond Blond's direct competitor with an illicit motive.  The statement constitutes commercial advertising because it is commercial speech, made by Beyond Blond's direct competitor. The purpose of Defendants' statement is to influence Beyond Blond's consumers to purchase or view Defendants' content to divert Beyond Blond's revenue and profits to Defendants.

69.     Defendants' statement, in and of itself, is also literally false because it purports to state a consumer's honest opinion of a product when the reviewer is actually a direct competitor not evaluating honestly.  Still, Defendants' statement regarding "low quality PD" is not an opinion but a measurable false fact.  So too is the statement that there is "no real company called 'BB Production.'"

70.     Defendants intended the statements to apply to all of Beyond Blond's videos because the reviews' substance and title target Beyond Blond in general.  The title of the review targets all of Beyond Blond's videos: "BB Productions PD Junk Found on YouTube."  The substance of the review targets all of Beyond Blond's videos: "BB Productions dishes out a bunch of low quality PD."

71.     The false advertising, false representations, false product reviews, and product disparagement referred to herein arise out of the aforesaid acts of Defendants, which violate section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a).

72.     The aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake, or deception in the form of false advertising and product disparagement.

73.     Beyond Blond has suffered both economic and reputational injury flowing from Defendants' deceptive campaign to negatively review his competitors' works,

including at least five Amazon accounts that found Defendants' negative review of Beyond Blond's videos "helpful."  But the true number of mislead consumers is unknown.

74.   Beyond Blond is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue its false advertising, and pecuniary compensation will not afford Beyond Blond adequate relief for the damage to its business in the public perception.  Indeed, after being placed on notice of the discovery of Defendants' surreptitious misconduct, Defendants have neither removed the illicit review nor issued a retraction.

## **PRAYER FOR RELIEF**

WHEREFORE Beyond Blond prays for judgment against Defendants, and each of them, as follows:

A.   That judgment be entered in favor of Beyond Blond and against Defendants;

B.   The Court enter a declaratory judgment that:

   i.   Defendants' Copyright Registrations are invalid and unenforceable, the copyrights are not infringed, and the notice was sent in bad faith under 17 U.S.C. § 512(f), constituting knowingly material misrepresentations;

   ii.   Defendants' Copyright Registrations do not and cannot provide copyright registration for Defendants' alleged cartoon classics logo, shown above, as a matter of law;

   iii.   Defendants have no right to claim exclusive trademark rights in the generic term "cartoon classics" either alone or in combination with copied public domain font and clipart eyes substituted for the double "o" letters in cartoon;

   iv.   Defendants have no right to interfere with Beyond Blond's use of the generic cartoon classics term, including as shown in the design format

**THIRD AMENDED COMPLAINT**

above;

v.   Beyond Blond use of "cartoon classics" has not infringed any of Defendants' trademark rights;

C.   That Defendant be ordered to abandon the '484 Application;

D.   That Defendant be ordered to immediately withdraw the takedown notices sent to Amazon and be enjoined from issuing any takedown notices to Beyond Blond's e-commerce partners alleging infringement of Defendants' purported trademark rights in the term cartoon classics and any copyright registrations;

E.   For an order awarding, at Beyond Blond's election, actual damages, in an amount to be fixed by the Court in accordance with proof, including punitive and exemplary damages as appropriate, as well as all of Defendants' profits or gains of any kind resulting from each cause of action, and further for an order awarding treble damages, pursuant to 15 U.S.C. § 1117(b) or any other applicable statute, because the acts of infringement were willful and wanton;

F.   That on the false advertising/product disparagement claim, Defendants issue corrective advertising approved by the Court to correct their false and misleading statements, including at least those identified hereinabove, and such corrective advertising be published on all websites on which Defendants' videos have been advertised or sold, and emailed to all customers who have purchased Defendants' videos over the Internet under 15 U.S.C. § 1116(a);

G.   For an order finding that an award of pre and post-judgment interest is necessary to fully compensate Beyond Blond for the damage it has sustained;

H.   For an order awarding to Beyond Blond all of its costs, including its attorneys' fees incurred in prosecuting this action, including under 15 U.S.C. § 1117 and 17 U.S.C. §§ 505 and 512(f);

I.   For an order awarding to Beyond Blond such other and further relief as the

**THIRD AMENDED COMPLAINT**

Court may deem just and proper.

Dated:  December 27, 2021                    Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

/s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
Beyond Blond Productions, LLC

**THIRD AMENDED COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiff, through their attorneys of record, hereby demand trial by Jury.

Dated:  December 27, 2021                           Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

/s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
Beyond Blond Productions, LLC

**THIRD AMENDED COMPLAINT**

EXHIBIT A

| | |
|---|---|
| Document title: | BB Productions PD Junk Found on YouTube |
| Capture URL: | https://www.amazon.com/gp/customer-reviews/R1834HPKKUYG4I?ref=pf_vv_at_pdctrvw_srp |
| Page loaded at (UTC): | Fri, 08 Oct 2021 15:19:19 GMT |
| Capture timestamp (UTC): | Fri, 08 Oct 2021 15:19:51 GMT |
| Capture tool: | v7.12.2 |
| Collection server IP: | 34.230.137.168 |
| Browser engine: | Chrome/77.0.3865.120 |
| Operating system: | Microsoft Windows NT 10.0.17763.0 (10.0.17763.0) |
| PDF length: | 3 |
| Capture ID: | c8be2fba-3cf4-446b-8247-6be1dcc87bd7 |
| User: | milord-priya |

PDF REFERENCE #:          bUy5VGmvvb4AKzFvbAxth5



## Customer Review

tvideo

★☆☆☆☆ **BB Productions PD Junk Found on YouTube**

Reviewed in the United States on September 10, 2017

**Verified Purchase**

BB Productions dishes out a bunch of low quality PD, nothing you can't get from YouTube or cheap DVDs. It must be some guy who has to much time on his hands as Prime viewing for PD isn't going to make anyone rich and no real company called "BB Productions". Anyone who uses the word "productions" is some small nobody. Again just common low quality quick buck PD.

5 people found this helpful

Helpful | Report abuse | Permalink

### Product Details

Cartoon Classics - Vol. 2: 25 Favori...
by Bugs Bunny

★★★★½ 4.5 out of 5

118 global ratings

| | | |
|---|---|---|
| 5 star | | 77% |
| 4 star | | 9% |
| 3 star | | 6% |
| 2 star | | 3% |
| 1 star | | 4% |

**See All Buying Options**

Add to Wish List

## Deals in magazine subscriptions

Page 1 of 9


**Men's Health**
★★★★☆ 170
Print Magazine
$6.00 ($1.20/issue)


**Travel + Leisure**
★★★★☆ 1,963
Print Magazine
**#1 Best Seller** in US Travel
$7.00 ($0.58/issue)


**National Geographic Kids**
★★★★½ 93
Print Magazine
$8.50 ($1.70/issue)


**Cosmopolitan**
★★★★☆ 5,922
Print Magazine
$7.00 ($0.78/issue)


**Reader's Digest**
★★★★☆ 754
Print Magazine
$5.00 ($1.00/issue)


**Chickens**
★★★★½ 222
Print Magazine
$19.99 ($3.33/issue)

See personalized recommendations

**Sign in**

New customer? Start here.



Back to top

**Get to Know Us**
Careers
Blog
About Amazon
Sustainability
Press Center
Investor Relations
Amazon Devices

**Make Money with Us**
Sell products on Amazon
Sell apps on Amazon
Become an Affiliate
Become a Delivery Driver
Start a package delivery business
Advertise Your Products
Self-Publish with Us
Host an Amazon Hub
› See More Ways to Make Money

**Amazon Payment Products**
Amazon Rewards Visa Signature Cards
Amazon.com Store Card
Amazon Secured Card
Amazon Business Card
Amazon Business Line of Credit
Shop with Points
Credit Card Marketplace
Reload Your Balance
Amazon Currency Converter

**Let Us Help You**
Amazon and COVID-19
Your Account
Your Orders
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Content and Devices
Amazon Assistant
Help









**Men's Health**
★★★★½ 170
Print Magazine
$6.00 ($1.20/issue)

**Travel + Leisure**
★★★★★ 1,963
Print Magazine
**#1 Best Seller** in US Travel
$7.00 ($0.58/issue)

**National Geographic Kids**
★★★★½ 93
Print Magazine
$8.50 ($1.70/issue)

**Cosmopolitan**
★★★★☆ 5,922
Print Magazine
$7.00 ($0.78/issue)

**Reader's Digest**
★★★★½ 754
Print Magazine
$5.00 ($1.00/issue)

**Chickens**
★★★★½ 222
Print Magazine
$19.99 ($3.33/issue)

See personalized recommendations

**Sign in**

New customer? Start here.

---

Back to top

**Get to Know Us**
Careers
Blog
About Amazon
Sustainability
Press Center
Investor Relations
Amazon Devices

**Make Money with Us**
Sell products on Amazon
Sell apps on Amazon
Become an Affiliate
Become a Delivery Driver
Start a package delivery business
Advertise Your Products
Self-Publish with Us
Host an Amazon Hub
› See More Ways to Make Money

**Amazon Payment Products**
Amazon Rewards Visa Signature Cards
Amazon.com Store Card
Amazon Secured Card
Amazon Business Card
Amazon Business Line of Credit
Shop with Points
Credit Card Marketplace
Reload Your Balance
Amazon Currency Converter

**Let Us Help You**
Amazon and COVID-19
Your Account
Your Orders
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Content and Devices
Amazon Assistant
Help

amazon

English | United States

Amazon Music
Stream millions
of songs

Amazon
Advertising
Find, attract,
and engage
customers

Amazon Drive
Cloud storage
from Amazon

6pm
Score deals
on fashion brands

AbeBooks
Books, art
& collectibles

ACX
Audiobook Publishing
Made Easy

Alexa
Actionable
Analytics
for the Web

Sell on Amazon
Start a Selling
Account

Amazon
Business
Everything
For
Your Business

Amazon Fresh
Groceries & More
Right To Your Door

AmazonGlobal
Ship Orders
Internationally

Home Services
Experienced
Pros
Happiness
Guarantee

Amazon Ignite
Sell your original
Digital Educational
Resources

Amazon Web
Services
Scalable Cloud
Computing
Services

Audible
Listen to Books &
Original
Audio
Performances

Book
Depository
Books With
Free
Delivery
Worldwide

Box Office Mojo
Find Movie
Box Office Data

ComiXology
Thousands of
Digital Comics

DPReview
Digital
Photography

East Dane
Designer Men's
Fashion

Fabric
Sewing,
Quilting
& Knitting

Goodreads
Book reviews
&
recommendations

IMDb
Movies, TV
& Celebrities

IMDbPro
Get Info Entertainment
Professionals Need

Kindle Direct
Publishing
Indie Digital & Print
Publishing
Made Easy

Amazon
Photos
Unlimited
Photo Storage
Free With Prime

Prime Video Direct
Video Distribution
Made Easy

Shopbop
Designer
Fashion Brands

Amazon
Warehouse
Great Deals on
Quality Used
Products

Whole Foods
Market
America's
Healthiest
Grocery Store

Woot!
Deals and
Shenanigans

Zappos
Shoes &
Clothing

Ring
Smart Home
Security
Systems

eero WiFi
Stream 4K Video
in Every Room

Blink
Smart Security
for Every Home

Neighbors
App
Real-Time
Crime
& Safety
Alerts

Amazon Subscription
Boxes
Top subscription boxes –
right to your door

PillPack
Pharmacy
Simplified

Amazon
Renewed
Like-new
products
you can trust

Amazon Second Chance
Pass it on, trade it in, give
it a second life

Conditions of Use   Privacy Notice   Interest-Based Ads   © 1996-2021, Amazon.com, Inc. or its affiliates

---

Document title: BB Productions PD Junk Found on YouTube
Capture URL: https://www.amazon.com/gp/customer-reviews/R1834HPKKUYG4I?ref=pf_vv_at_pdctrvw_srp
Capture timestamp (UTC): Fri, 08 Oct 2021 15:19:51 GMT

EXHIBIT B



EDWARD HELDMAN III
PRESIDENT
COMEDYMX, INC.

February 29, 2020

*Via Email Only to abuse@amazonaws.com*

Copyright Agent/Amazon Web Services
Amazon.com Legal Department
P.O. Box 81226
Seattle, WA 98108
phone: (206) 266-4064
fax: (206) 266-7010
e-mail: abuse@amazonaws.com

**Re:   DMCA TAKEDOWN NOTICE –  CARTOON CLASSICS By BB Productions** *Pursuant to 17 U.S.C. § 512(c)(3)(A)*

Ladies and Gentlemen:

It has come to the attention of Comedy MX, Inc. ("Comedy MX") that its intellectual property is being infringed by BB Productions ("BB Productions") on Amazon.  Specifically, ComedyMX owns the copyright to the CARTOON CLASSICS original stylized logo design. BB Production's use is unauthorized and is being used promote similar goods and services on your website Amazon.com. The unauthorized copying of ComedyMX's original stylized logo constitutes willful infringement under the Copyright Act (17 U.S.C. § 101, *et. seq.*), which entitles ComedyMX to damages, profits, statutory damages, injunctive relief and attorneys' fees.

ComedyMX is also the owner of all copyright rights associated with its original stylized logo design that is the subject of multiple copyright registrations, including U.S. Copyright No. PAu003798644.  *See more extensive* list below.

The Copyrighted Work is now being infringed on Amazon in the CARTOON CLASSICS Cartoon Compilation videos By BB Productions (the "Infringing Material").

The Infringing Material can be found at the following URLs:

Cartoon Classics - Vol. 1: 25 Favorite Cartoons - 3 Hours
https://www.amazon.com/Cartoon-Classics-Favorite-Cartoons-Hours/dp/B06WD8MNGG/

Cartoon Classics - Vol. 2: 25 Favorite Cartoons - 3 Hours

Amazon
February 29, 2020
Page 2 of 4


https://www.amazon.com/Cartoon-Classics-Favorite-Cartoons-Hours/dp/B06XDQBQLN/


Cartoon Classics - Vol. 3: 25 Favorite Cartoons - 3 Hours
https://www.amazon.com/Cartoon-Classics-Favorite-Cartoons-Hours/dp/B071XNKHNK/


Cartoon Classics - Vol. 4: 25 Favorite Cartoons - 3 Hours
https://www.amazon.com/Cartoon-Classics-Favorite-Cartoons-Hours/dp/B07513T34P/


Cartoon Classics - Vol. 5: 25 Favorite Cartoons - 3 Hours
https://www.amazon.com/Cartoon-Classics-Favorite-Cartoons-Hours/dp/B079SRPXX9/


Cartoon Classics - Vol. 6: 25 Favorite Cartoons - 3 Hours
https://www.amazon.com/Cartoon-Classics-Favorite-Cartoons-Hours/dp/B07RYXR1X9/

The Infringing Material includes the copyrighted artwork original stylized logo that was created by ComedyMX including the pending trademark application for the CARTOON CLASSICS Design USPTO Application #88789484.

To be clear, this DMCA notice concerns multiple copyrights including but not limited to US Registration Numbers:

PAu003798644
PAu003801911
PAu003986151
PAu003803308
PAu003801793
PAu003801795
PAu003803401
PAu003921426

ComedyMX requests that Amazon take down the Infringing Material immediately.

ComedyMX has a good faith belief that the use of the material in the manner complained of is not authorized by ComedyMX as copyright owner.

The information in this notification is accurate, and under penalty of perjury, ComedyMX is the owner of an exclusive right that is allegedly infringed.

Amazon
February 29, 2020
Page 3 of 4


      Nothing in this letter shall constitute a waiver or relinquishment of any rights, remedies or causes of action that ComedyMX may possess in connection with the issues raised in this letter.  Moreover, ComedyMX expressly reserves all rights, remedies and causes of action it may have. This letter purports to be neither a complete statement of all relevant facts nor a complete statement of all of ComedyMX's claims and causes of action in this case.

      Please do not hesitate to contact me if you have any questions regarding this letter.   You may reach me via e-mail at eheldman3@comedymx.com

                        Best regards



                        Edward Heldman, III
                        President, ComedyMX, Inc.,


C: +1.201.679.7428
eheldman3@ComedyMX.com           CC: ec2-abuse@amazon.com,
                                  copyright@amazon.com


ComedyMX Inc.
123 W. Nye Lane, Suite 129
Carson City, NV 89706



Amazon
February 29, 2020
Page 4 of 4



EXHIBIT C

EDWARD HELDMAN III
PRESIDENT
COMEDYMX, INC.

March 30, 2020

*Via Email Only to abuse@amazonaws.com*

Copyright Agent/Amazon Web Services
Amazon.com Legal Department
P.O. Box 81226
Seattle, WA 98108
phone: (206) 266-4064
fax: (206) 266-7010
e-mail: abuse@amazonaws.com

**Re:   DMCA TAKEDOWN NOTICE –  PATRIOTIC CARTOON CLASSICS By
BB Productions** *Pursuant to 17 U.S.C. § 512(c)(3)(A)*

Ladies and Gentlemen:

It has come to the attention of Comedy MX, Inc. ("Comedy MX") that its intellectual property is being infringed by BB Productions ("BB Productions") on Amazon.  Specifically, ComedyMX owns the copyright to the CARTOON CLASSICS original stylized logo design which is part of multiple copyrighted works. BB Production's use is unauthorized and is being used promote similar goods and services on your website Amazon.com. The unauthorized copying of ComedyMX's original stylized logo constitutes willful infringement under the Copyright Act (17 U.S.C. § 101, *et. seq.*), which entitles ComedyMX to damages, profits, statutory damages, injunctive relief and attorneys' fees.

ComedyMX is also the owner of all copyright rights associated with its original stylized logo design which is part of multiple copyrighted works that is the subject of multiple copyright registrations, including U.S. Copyright No.  PAu003798644.  *See more extensive* list below.

The Copyrighted Work is now being infringed on Amazon in the CARTOON CLASSICS Cartoon Compilation videos By BB Productions (the "Infringing Material").

The Infringing Material can be found at the following URLs:

Patriotic Cartoon Classics: 25 All-American Cartoons from World War II
https://www.amazon.com/Patriotic-Cartoon-Classics-All-American-Cartoons/dp/B071GZK4T4/

---

TEL  201.679.7428                          123 W NYE LN                          eheldman3@comedymx.com
                                CARSON CITY, NEVADA 89706                          www.comedymx.com

Amazon
March 30, 2020
Page 2 of 3

The Infringing Material includes the copyrighted artwork original stylized logo that was created by ComedyMX including the pending trademark application for the CARTOON CLASSICS Design USPTO Application #88789484.

To be clear, this DMCA notice concerns multiple copyrights including but not limited to US Registration Numbers:

PAu003798644
PAu003801911
PAu003986151
PAu003803308
PAu003801793
PAu003801795
PAu003803401
PAu003921426

ComedyMX requests that Amazon take down the Infringing Material immediately.

ComedyMX has a good faith belief that the use of the material in the manner complained of is not authorized by ComedyMX as copyright owner.

The information in this notification is accurate, and under penalty of perjury, ComedyMX is the owner of an exclusive right that is allegedly infringed.

Nothing in this letter shall constitute a waiver or relinquishment of any rights, remedies or causes of action that ComedyMX may possess in connection with the issues raised in this letter.  Moreover, ComedyMX expressly reserves all rights, remedies and causes of action it may have. This letter purports to be neither a complete statement of all relevant facts nor a complete statement of all of ComedyMX's claims and causes of action in this case.

Please do not hesitate to contact me if you have any questions regarding this letter.   You may reach me via e-mail at eheldman3@comedymx.com

Best regards

Edward Heldman, III
President, ComedyMX, Inc.,

C: +1.201.679.7428
eheldman3@ComedyMX.com                           CC: ec2-abuse@amazon.com,

Amazon
March 30, 2020
Page 3 of 3

copyright@amazon.com

ComedyMX Inc.
123 W. Nye Lane, Suite 129
Carson City, NV 89706





EXHIBIT D

**From:** Milord Keshishian <milord@milordlaw.com>
**Sent:** Thursday, March 26, 2020 11:29 AM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>
**Subject:** ComedyMX Takedown Notices re Michelle Justice
**Importance:** High

Dear Mr. Lila:

Your correspondence below has been forwarded to us for response.  We are counsel for Ms. Justice, please forward all further communications to our attention.  Ms. Justice takes all allegations of valid copyright infringement seriously and to evaluate the same. please provide by **5:00 p.m. on March 27, 2020** the copyright registrations and deposit material for the following takedown notices sent by your client to Amazon:

| | |
|---|---|
| CASE 6890999701 | Cartoon Classics - Vol. 1: 25 Favorite Cartoons - 3 Hours |
| CASE 6891043541 | Cartoon Classics - Vol. 2: 25 Favorite Cartoons - 3 Hours |
| CASE 6891006641 | Cartoon Classics - Vol. 3: 25 Favorite Cartoons - 3 Hours |
| CASE 6890994521 | Cartoon Classics - Vol. 4: 25 Favorite Cartoons - 3 Hours |
| CASE 6891030291 | Cartoon Classics - Vol. 5: 25 Favorite Cartoons - 3 Hours |
| CASE 6891048961 | Cartoon Classics - Vol. 6: 25 Favorite Cartoons - 3 Hours |

In addition, by **5:00 p.m. on March 27, 2020**, we expect to receive your client's pre-notification investigation report identifying (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works.

If we do not receive the requested information by said time and date, that will confirm your client's lack of due diligence before issuing take down notice and entitle us to file counter-notifications with Amazon.  We look forward to immediate receipt of the requested information, which your client must have assembled prior to issuing the takedown notices.

If you should have any additional questions or comments, please contact us.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel  310-226-7878
www.milordlaw.com

***********************CONFIDENTIALITY NOTICE***********************

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

EXHIBIT E

**From:** Ben T. Lila <blila@mandourlaw.com>
**Sent:** Thursday, March 26, 2020 7:10 PM
**To:** Milord Keshishian <milord@milordlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Milord:

We represent ComedyMX LLC ("ComedyMX"), owner of U.S. Trademark Serial No. 88/789,484 for CARTOON CLASSICS! (+Design). ComedyMX is also the owner of all copyright rights associated with its original stylized logo design that is the subject of multiple copyright registrations, including U.S. Copyright No. PAu003798644. *See* attached. ComedyMX has used the trademark and copyright logo design continuously in interstate commerce on certain goods and services including, but not limited to, entertainment services.

We have observed that BB Productions is using our client's CARTOON CLASSICS trademark and logo design without authorization to promote similar goods and services on the website Amazon.com. BB Production's use of CARTOON CLASSICS is likely to cause confusion in violation of trademark and other unfair competition laws including, but not limited to, the Lanham Act (15 U.S.C. § 1051, *et seq.*). BB Production's use is likely to lead the public to believe that its products and services are licensed by, sponsored by, or otherwise affiliated with ComedyMX which is not the case. Also, the unauthorized copying of our client's logo design constitutes copyright infringement under the Copyright Act (17 U.S.C. § 101, *et. seq.*).

We demand that BB Productions immediately cease and desist all use of CARTOON CLASSICS and our client's copyrighted design, including without limitation, on Amazon.com, in videos and on any other website. Should BB Productions not immediately address our client's concerns, we will pursue all available remedies. Please contact me in writing by **April 6, 2020** to confirm that your client has complied with the above.

The demands asserted herein are with full reservation of all rights and remedies that our client may possess including, but not limited to, past and continuing profits, actual damages, treble damages, attorneys' fees, claims of dilution and the right to injunction.


Best Regards,
Ben


Ben T. Lila, Esq.
Mandour & Associates, APC - Intellectual Property Law
12121 Wilshire Boulevard, Suite 810
Los Angeles, California 90025
T: 310-656-3900
************************************************************************
CONFIDENTIAL COMMUNICATION: This message is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
************************************************************************



EXHIBIT F

**From:** Milord Keshishian
**Sent:** Friday, March 27, 2020 7:48 PM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Dear Ben:

While I appreciate your quick response, the failure to provide our requested information confirms that ComedyMX's takedown notices are in bad faith. I understand that you were probably handcuffed because ComedyMX simply lacks copyright protection to issue the takedown notices, but would have appreciated your forthright offer to immediately withdraw the baseless Digital Millennium Copyright Act takedown notices. Please be advised of your Rule 11 obligations moving forward in this matter.

My correspondence specifically requested ComedyMX's pre-notification investigation analysis identifying the copyright registrations and (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works. Although, your correspondence references out of hand U.S. Copyright registration No. PAu003798644, ComedyMX failed to provide the deposit material as requested, let alone identify the protectible elements and the alleged substantial similarity therewith. Instead, we are delivered a misrepresentation that the "Cartoon Classics" logo is copyrighted in the '644 registration. As you should be aware, a performing arts copyright registration only covers "(1) musical works, including any accompanying words; (2) dramatic works, including any accompanying music; (3) pantomimes and choreographic works; and (4) motion pictures and other audiovisual works." Form PA. The Copyright Office printout, attached hereto, for the '644 registration confirms that the logo is not listed as a protectible element, nor could it as a matter of law.

The use of the '644 performing arts registration to claim copyright registration ownership in the generic term "Cartoon Classics" is meritless because short phrases are not copyrightable. 37 C.F.R. 202.1(a); *Bernal v. Paradigm Talent & Literary Agency,* 788 F.Supp.2d 1043, 1072 (C.D.Cal.2010) (short phrases such as "I miss you," "He's so funny," "Stay away from this neighborhood," and "Mmm. That's it" were "ordinary, common expressions that [were] not copyrightable"); see also *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 (9th Cir.2000) ("Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed"). Thus, even inserting pupils and irises into the double "o" letters in cartoons does not rise to the level of protectible expression to be copyrightable because eyes appear in nature and are not afforded copyright protection. "These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003). It is axiomatic that designs that are "standard, stock, or common to a particular subject matter or medium are not protectable under copyright

law." *Id.,* at 810; *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls."). Further, any copyrighted expression must be "original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Id.* Here, a simple search of stock cartoon eyes immediately defeat ComedyMX's claim of originality, even assuming arguendo the eyes are protectible, because ComedyMX merely copied preexisting clip art.



ComedyMX even copied the shape and placement of the eyebrows. Assuming ComedyMX did actually have a copyright registration and did not copy the eyes from preexisting clip art, ComedyMX's expression of the generic term "Cartoon Classics" is not substantially similar to the accused expression, as demonstrated by the side by side comparison below:



But ComedyMX has a greater burden here than substantial similarity because eyes occur in nature and any infringement, assuming ComedyMX has any protectible rights, must be proven by verbatim copying. Where a design incorporates stock or commonplace images, it is entitled to, at most, a very "thin" or "weak" copyright – assuming ComedyMX is entitled to any protection. *Satava,* 323 F.3d at 812 ("thin" copyright in jellyfish design); *Franklin Mint Corp. v. Nat'l Wildlife Art Exchange,* 575 F.2d 62, 65 (3d Cir. 1978) ("weak" copyright in common elements of bird design). In those circumstances, only virtually identical copying is prohibited. *Satava,* 323 F.3d at 812 ("thin copyright... protects against only virtually identical copying"); *see also Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp.,* 562 F.2d 1157,

1168 (9th Cir. 1977) (where limited number of ways to express concept, "there will be protection against nothing other than identical copying of the work").

Thus, the only conclusion that can be drawn based on ComdyMX's lack of copyright registration in its generic logo is the DMCA copyright takedown notices were in bad faith and must immediately be withdrawn.

Your reference to the trademark application ComedyMX filed last month, which is not yet registered, does not save ComedyMX from its bad faith DMCA copyright takedown notice.  Amazon does not allow takedown notices for unregistered trademarks, thus there was no trademark notification filed by ComedyMX.  Moreover, the term "cartoon classics" is generic and refers to classic cartoons and was used as such by Walt Disney Cartoon Classics series from 1983 to 1986.  It has also been used by numerous others, predating ComedyMX's alleged first use date of 2015.  See September 11, 2008 Wired article titled "10 Cartoon Classics to Share with your Kids" as merely one example of many.  "A generic term cannot be registered as a trademark because such a term cannot function as an indication of source." *BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 1569 (Fed. Cir. 1995).  Thus, despite the addition of the eyes, the mark is generic and the nascent application will not mature to registration because even if the U.S. Patent and Trademark Office does not refuse registration, our client will certainly file an opposition thereto.

Despite your valiant efforts to protect ComedyMX, our detailed analysis provides authority and proof of ComedyMX's bad faith.  But in an effort to resolve this matter expeditiously, ComedyMX will agree to immediately withdraw its DMCA notification of infringement issued to Amazon, in return our client agrees to not depiction of eyes in the term "cartoon."  Please advise by no later than **5:00 p.m. on March 30, 2020** if ComedyMX has immediately withdrawn the six takedown notices issued to Amazon.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel (310) 226-7878
Fax (310) 226-7879
www.milordlaw.com

************************CONFIDENTIALITY NOTICE************************

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this

message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.



United States Copyright Office

Library buildings are closed to the public until further notice, but the U.S.
Copyright Office Catalog is available. **More**.

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu003798644
Search Results: Displaying 1 of 1 entries

◀ previous    next ▶



### *8thManDVD Copyright Video 1, et al.*

**Type of Work:** Motion Picture

**Registration Number / Date:** PAu003798644 / 2016-01-26

**Application Title:** 8thManDVD Copyright Video 1, et al.

**Title:** 8thManDVD Copyright Video 1, et al.

**Description:** Electronic file (eService)

**Copyright Claimant:** ComedyMX LLC. Address: P.O. Box 896, Pine Brook, NJ, 07058, United States.

**Date of Creation:** 2016

**Authorship on Application:** ComedyMX LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture.

**Rights and Permissions:** ComedyMX LLC, P.O. Box 896, Pine Brook, NJ, 07058, United States

**Copyright Note:** Basis for Registration: Unpublished collection.

**Contents:** 8thManDVD Copyright Video 1.
8thManDVD Copyright Video 2.
8thManDVD Copyright Video 3.
8thManDVD Copyright Video 4.
8thManDVD Copyright Video 5.
8thManDVD Copyright Video 6.
8thManDVD Intro Video 1.
8thManDVD Intro Video 2.
8thManDVD Intro Video 3.
8thManDVD Intro Video 4.
8thManDVD Intro Video 5.
8thManDVD Intro Video 6.
8thManDVD Title Card 1.
8thManDVD Title Card 2.
8thManDVD Title Card 3.

8thManDVD Title Card 4.
8thManDVD Title Card 5.
8thManDVD Title Card 6.
8thManDVD Title Card 7.
8thManDVD Title Card 8.
8thManDVD Title Card 9.
8thManDVD Title Card 10.
8thManDVD Title Card 11.
8thManDVD Title Card 12.

**Names:** ComedyMX LLC



| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format  Full Record | Format for Print/Save | |
| Enter your email address: | | Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, Plaintiff, | CV 20-5581 DSF (GSJx) |
| v. | Order GRANTING Plaintiff's Motion for a Preliminary Injunction (Dkt. 14) |
| EDWARD HELDMAN III, et al., Defendants. | |

Plaintiff Beyond Blond Productions, LLC requests a preliminary injunction ordering Defendants Edward Heldman III, ComedyMX, Inc., and ComedyMX, LLC to withdraw six Digital Millennium Copyright Act (DMCA) takedown notices issued to non-party Amazon for Plaintiff's "cartoon classics" videos and refrain from issuing any further DMCA takedown notices.  Dkt. 14 (Mot.).[1]  Defendants oppose.  Dkt. 19 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

Plaintiff is a small business that "helps content owners leverage their music and video catalogs into new and different product offerings

---

[1] Plaintiff's reply brief exceeds 12 pages, which violates this Court's Standing Order.  Dkt. 10 (Standing Order) at 4.c. ("Replies shall not exceed 12 pages.").  Further failures to comply with the Court's Orders may result in sanctions, including the striking of documents.

for digital distribution." Dkt. 14-1 (Justice Decl.) ¶ 2.  Plaintiff also "acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms." Id. ¶ 4.  In late 2016 or early 2017, Plaintiff acquired, digitized, and edited cartoon classics from BetaSP tapes and the public domain, including Bugs Bunny, Popeye, and Mighty Mouse.  Id. ¶ 5.  Heldman is a member of ComedyMX, LLC and the Chief Operating Officer of ComedyMX, Inc.  Dkt. 19-2 (Heldman Decl.) ¶ 1.  Defendants "creat[e] copyrightable derivative works from public domain content . . . and licens[e] the derivative works through various means." Id. ¶ 2.

Between February 2017 and May 2019, Plaintiff uploaded six cartoon classic compilations to Amazon's Prime Video Direct (Amazon Video).  Justice Decl. ¶ 7.  In March 2020, Heldman viewed these videos and submitted DMCA takedown notices to Amazon "on behalf of" ComedyMX, LLC, the owner of U.S. Copyright No. PAu00378644 (the '644 Registration) and U.S. Copyright No. PAu003801793 (the '793 Registration).  Heldman Decl. ¶¶ 2-3; see also Justice Decl. Ex. 1.  Plaintiff's president, Michelle Justice, declares that she was not aware of Defendants' videos until March 20, 2020 when she received notice from Amazon that Defendants had issued six DMCA takedown notices for Plaintiff's six videos.  Justice Decl. ¶ 10.  On March 31, 2020, Plaintiff filed counternotifications with Amazon, but Amazon responded that it would not restore Plaintiff's videos unless Defendants withdrew their takedown notices.  Id. ¶¶ 13-14 & Exs. 3, 4.  After Amazon rejected Plaintiff's appeal, id. ¶ 15, Plaintiff brought this action asserting claims against Defendants for Misrepresentation of Copyright Claims, 17 U.S.C. § 512(f), Declaration of Copyright and Trademark Invalidity, Unenforceability, and Non-Infringement, Tortious Interference with Existing and Prospective Economic Advantage, Trade Libel/Product Disparagement, and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, Dkt. 1 (Compl.).  While this motion was pending, Defendants filed another takedown notice.  Dkt. 21-1 (Suppl. Justice Decl.) ¶ 13 & Ex. 19.  The next day, Plaintiff noticed that Amazon had independently taken down two additional videos.  Id. ¶ 14.

2

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotation marks omitted). However, if a party seeks a mandatory injunction, "she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). "[M]andatory injunctions should not issue in 'doubtful cases.'" Id. (quoting Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr., 636 F.3d 1150, 1160 (9th Cir. 2011)).

## III. DISCUSSION

### A.    Whether the Law and Facts Clearly Favor Plaintiff's Position

Plaintiff contends it is likely to succeed on its first three causes of action for Declaration of Copyright Invalidity, Unenforceability, and Non-Infringement, Declaration of Trademark Invalidity, Unenforceability, and Non-Infringement, and Misrepresentation of Copyright Claims under 17 U.S.C. § 512(f). The Court finds Plaintiff is

likely to succeed on the declaratory relief claims and that the law and facts clearly favor Plaintiff's position on those claims.[2]

## 1.   Declaration of Copyright Invalidity, Unenforceability, and Non-Infringement

Plaintiff seeks a declaration that the '644 Registration is invalid and unenforceable, Compl. ¶ 39, and that Plaintiff's six videos have "not infringed, do[] not infringe, and would not infringe, either directly or indirectly, any valid, enforceable and/or protectable expression in the '644 Registration," id. ¶ 40.[3]  In a declaratory judgment action, the burden of proving infringement remains with the rightsholder.  See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 199 (2014) ("the burden of proving infringement should remain with the

---

[2] "A declaratory judgment can . . . be used as a predicate to further relief, including an injunction."  Powell v. McCormack, 395 U.S. 486, 499 (1969); see also Rincon Band of Mission Indians v. Harris, 618 F.2d 569, 575 (9th Cir. 1980) ("the Declaratory Judgment Act . . . would empower the district court to grant supplemental relief, including injunctive relief").

[3] In addition to the '644 Registration, Defendants contend ComedyMX, LLC is the owner of three additional Copyright Registrations: PAu003801793, PAu003921426 and PAu003986151.  Mot. at 4 (citing Heldman Decl. Ex. 4). However, given that these copyrights are not mentioned in the Complaint, their relevance to this motion is not clear.  Heldman does declare that he submitted the DMCA takedown notices based on his "good-faith belief" that Plaintiff infringed the works covered by the '644 Registration and the '793 Registration.  Heldman Decl. ¶ 3.  However, the '793 Registration is not relevant to Plaintiff's copyright non-infringement claim.  Therefore, the Court does not address Plaintiff's contention that these additional registrations are also invalid because "[a]lthough each registration is for an unpublished collection, the various cartoons listed in each application were previously published by Defendants . . . prior to the registration dates of the '151 and '793 Registrations."  Dkt. 21 (Reply) at 2, 8-10.  Moreover, contrary to Defendants' assertion, two of the copyright registrations are owned by ComedyMX, Inc. and not ComedyMX, LLC.  Id. at 3-4.  Adding further to the confusion, the notices Plaintiff obtained state that they were filed on behalf of ComedyMX Inc., not ComedyMX, LLC.  See Justice Decl. Ex. 1.

patentee"); <u>Marya v. Warner/Chappell Music, Inc.</u>, 131 F. Supp. 3d 975, 984 (C.D. Cal. 2015) ("just as in <u>Medtronic</u>, there is no reason to relieve the alleged owners of the intellectual property of the usual burden of proof just because they are nominally the defendants in this declaratory judgment action"); <u>Williams v. Bridgeport Music, Inc.</u>, No. LA CV13-06004 JAK, 2014 WL 7877773, at *5 (C.D. Cal. Oct. 30, 2014) ("In an action seeking a declaration of non-infringement, the party who owns the work as to which infringement is claimed bears the burden"). Therefore, the burden is on Defendants to show copyright infringement.

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" <u>Funky Films, Inc. v. Time Warner Entm't</u>, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)). As to the first element, "[a] copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" <u>United Fabrics Int'l, Inc. v. C&J Wear, Inc.</u>, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)). "An accused infringer can rebut this presumption of validity" by "offer[ing] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." <u>Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.</u>, 122 F.3d 1211, 1217 (9th Cir. 1997). "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'" <u>Rentmeester v. Nike, Inc.</u>, 883 F.3d 1111, 1117 (9th Cir. 2018), <u>cert. denied,</u> 139 S. Ct. 1375 (2019). "By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation." <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 486 (9th Cir. 2000).

Plaintiff contends that the '644 Registration is invalid and unenforceable, and that Plaintiff's videos are non-infringing for three primary reasons: 1) the '644 Registration cannot, and does not, protect Defendants' cartoons classic logo, 2) Plaintiff did not access Defendants'

works, and 3) the works are not substantially similar.  Compl. ¶¶ 39-40.[4]

Plaintiff does not contend that the '644 Registration is invalid on its face, but rather that it "cannot extend to [Defendants'] purported trademark in the 'cartoon classics' term and copied eye design."  Mot. at 8.  First, the '644 Registration is a Performing Arts (PA) copyright registration that covers a "Motion Picture" consisting of an "unpublished collection."  Heldman Decl. Ex. 4 at 1.  Plaintiff contends that PA copyright registration cannot and does not extend to Defendant's "cartoon classics" design because PA registrations cover "[w]orks of the performing arts" such as "Musical works . . .; dramatic works . . .; pantomimes and choreographic works; and motion pictures and other audiovisual works," not logos, and "the '644 Registration does not even list the purported trademark design as protected material under the 'Contents' heading."  Mot. at 8 (citing 37 CFR § 202.3(b)(1)(ii)).  The '644 Registration clearly does not cover the "cartoon classics" design logo.

That Defendants obtained a copyright in their motion pictures does not equate to protection of design logos contained in those videos.  See Secret of the Islands, Inc v. Hymans Seafood Co. Inc., No. 2-17-CV-00342, 2018 WL 1566706, at *4 (D.S.C. Mar. 30, 2018) ("A copyright in an image does not equal trademark protection in the products in that image"); see also Warner Bros. Entm't v. X One X Prods., 840 F.3d 971,

---

[4] Specifically, Plaintiff alleges that the '644 Registration is invalid and unenforceable because "the copyright does not protect the cartoons classic logo," the logo "consists of common geometric shapes[] [and] unprotectable eyes from the public domain," and the logo "is not copyrightable subject matter."  Compl. ¶ 39.  And Plaintiff's videos do not infringe the '644 Registration because: "(1) Counter-Defendant has not alleged access; (2) the '644 Registration does not cover a logo; (3) common geometric shapes[] and eyes from the public domain and pre-existing third party artwork are not protectable; and (4) [Plaintiff's] accused six videos and cartoon classics depiction are neither substantially similar nor virtually identical to protectable elements in the '644 Registration."  Compl. ¶ 40.

980 (8th Cir. 2016) (copyright protection extends to "copy[ing] the film itself," while trademark protection applies to product marketing "employ[ing] iconic film characters' pictures to associate the products with [plaintiff's] films").

Second, "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering or coloring" are "not subject to copyright," 37 C.F.R. § 202.1(a), and "distinctiveness in typographic ornamentation will not ordinarily qualify otherwise noncopyrightable material for copyright protection," Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972); see also Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1080-81 (9th Cir. 2000) ("'textual matter' is not [copyrightable] – at least not unless the text 'aid[s] or augment[s]' an accompanying graphical illustration." (second and third alterations in original) (quoting 1 NIMMER § 2.08[G][2], at 2-136)); Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc., 639 F. Supp. 2d 1356, 1361-62 (S.D. Fla. 2009) (although defendant "obviously pilfer[ed] the words and stylized font and colors of the 'Cash4Gold' mark, . . . these items alone cannot make out a claim for copyright infringement").  Although "[i]t is true, of course, that a *combination* of unprotectable elements may qualify for copyright protection," "it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection."  Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003).  "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  Id.  Here, Plaintiff's undisputed testimony shows that Defendants' "cartoon classics" logo uses "public domain off-the[-]shelf Freestyle Script type face" and "public domain and generic clipart eyes."  Justice Decl. ¶¶ 18-19 & Exs. 6-7.  The law and facts clearly favor the conclusion that this combination of two unprotectable elements is not sufficiently numerous or original to constitute original work entitled to copyright protection.  This provides further evidence that the cartoon classics logo is not a protectible element of the works covered by the '644 Registration.

Therefore, the Court agrees that the '644 Registration does not provide copyright protection to the "cartoon classics" logo displayed in Defendants' videos.

Defendants do not address these arguments directly.  Instead, Defendants lump together the design logo claims with claims of other alleged infringement.[5]  See Opp'n at 6 (the '644 Registration also includes "color correction, added watermarks and title cards in addition to the creation and application of the Cartoon Classics! Copyrighted Design Logo."); id. (in addition to the logo, "there is clear evidence of direct copying of the works, including original elements of the work." (citing Dkt. 19-1 (Wood Decl.) ¶¶ 6-10 & Exs. 1-3 and Heldman Decl. ¶¶3-7 & Exs. 4, 6-7)).  Specifically, Heldman declares that he "believe[s] [] that [Plaintiff] copied ComedyMX LLC's copyrighted works." Heldman Decl. ¶ 8.  His belief is based on the following: 1) Plaintiff's video of the cartoon "Pigs in a Polka" did not contain a title card although most of Plaintiff's videos did contain the original title card, and Defendants' video of the same cartoon had a title card with its "8thManDVD.com" trademark prominently displayed, id. ¶ 6; 2) Plaintiff's video of the Popeye cartoon "Ancient Fistory" is cropped in a way that "appears to correspond exactly with the removal of the '8thManDVD.com' watermark" in Defendants' video of that cartoon, id. ¶ 7; and 3) Plaintiff "appears to be infringing third party copyrighted content as well" because Plaintiff's video of the cartoon "the Impatient Patient" appears to come not from the black and white version that is in the public domain, but the colorized version copyrighted by Warner Bros, id. ¶ 8.  Similarly, Keith Wood, who has worked as a contractor

---

[5] Defendants' feigned indignation in contending that "Plaintiff improperly focuses solely on ComedyMX LLC's CARTOON CLASSICS! logo as not being entitled to copyright protection," Opp'n at 5-6, is not well taken.  When Plaintiff's counsel asked Defendants' counsel for the reasons supporting the takedown notices, Defendants' counsel responded that "BB Productions is using our client's CARTOON CLASSICS trademark and logo design without authorization to promote similar goods and services on the website Amazon.com."  Dkt. 15-2 (Keshishian Decl. Ex. B).  It did not mention any other basis, so it is not clear why Plaintiff's focus on the logo is "improper."

for ComedyMX, LLC, opined that 1) Plaintiff's frame in "Ancient Fistory" "exactly crops out ComedyMX LLC's watermark" and "jitters in the same places/times" as Defendants' version; and 2) Plaintiff's "Pigs in a Polka" cuts out Defendants' watermark, contains identical colors to Defendants' version, does not jitter at all, and lacks a title card even though most other cartoons contained the title card.  Wood Decl. ¶¶ 3, 5-8, 10.

Justice convincingly explains each of these purported discrepancies.  First, there are public domain videos of Ancient Fistory and Pigs in a Polka cropped the same way as Plaintiff's video.  Suppl. Justice Decl. ¶¶ 3, 10.  In fact, the Pigs in a Polka video "was sourced digitally from Public Domain sources" and the Ancient Fistory video was obtained from her BetaSP tape collection.  Id. ¶¶ 6, 12.  Additionally, Wood's overlay is inaccurate; a proper overlay would show that had Plaintiff used Defendants' cartoon, the watermark would not have been completely cropped out.  Id.  Justice also declares that Wood's overlay of Pigs in a Polka is inaccurate and provides affirmative testimony that her original source file did not contain any watermarks, and if she had used Defendants' cartoons, the watermark would not have been completely cropped out.  Id. ¶ 4.  Justice also notes that to the extent the jitter is identical, that could also be caused by both parties obtaining the same public domain footage.  Id. ¶ 5.  Finally, Justice explains that Plaintiff's Pigs in a Polka cartoon does not include the title card because the original image contained music and therefore required a synchronization license, which Plaintiff did not have.  Id. ¶ 8.  Additionally, Justice affirmatively declares that she was not aware of Defendants' videos until March 20, 2020 when she received notice from Amazon that Defendants had issued the takedown notices.  Justice Decl. ¶ 10.

Plaintiff has shown that the facts and the law clearly favor the position that the '644 Registration does not protect the cartoon classics logo.  Plaintiff has also rebutted the evidence provided by Defendant purporting to show direct copying of the potential protectible elements of the '644 Registration, and met its burden of showing that the facts clearly favor its independent creation.  Therefore, the Court finds that

9

the facts and the law clearly favor Plaintiff's position that it is entitled
to a declaration that its videos do not infringe the '644 Registration.

### 2.   Declaration of Trademark Invalidity, Unenforceability, and Non-Infringement

The Ninth Circuit "recognize[s] four categories of terms with
regard to potential trademark protection: (1) generic, (2) descriptive, (3)
suggestive, and (4) arbitrary or fanciful terms." Elliott v. Google, Inc.,
860 F.3d 1151, 1155 (9th Cir. 2017) (citing Filipino Yellow Pages, Inc.
v. Asian Journal Publications, Inc., 198 F.3d 1143, 1146 (9th Cir.
1999)).  On the one end of the spectrum, "[g]eneric terms are not
protectable because they do not identify the source of a product."  Id.
Descriptive terms enjoy trademark protection only if they acquire
"secondary meaning," which means that they "become distinctive of the
trademark applicant's goods in commerce."  Rudolph Int'l, Inc. v.
Realys, Inc., 482 F.3d 1195, 1197-98 (9th Cir. 2007) (quoting Filipino
Yellow Pages, 198 F.3d at 1147).  "Marks that are suggestive, arbitrary
or fanciful can be protected without demonstrating secondary
meaning."  Id. at 1198.  Where "the disputed term has not been
federally registered, and the defendant asserts genericness as a
defense, the burden shifts to the plaintiff to show that the mark is
nongeneric."  Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove,
Inc., 419 F.3d 925, 927 (9th Cir. 2005).

Here, Defendants have applied for trademark protection of their
cartoon classics logo, U.S. Trademark Serial No. 88/789,484 ('484
Application), but the mark has not yet been registered, although it was
published in the Trademark Official Gazette on June 16, 2020.
Heldman Decl. ¶ 9 & Ex. 5.  Therefore, it is Defendants' burden to show
that their mark is not generic.  To determine whether a mark is
generic, courts use the "who-are-you/what-are-you" test.  Yellow Cab,
419 F.3d at 929.  A mark is generic if it answers the question "what are
you."  Id.  Here, based on use in the industry and Defendants' own use,
see Dkt. 15 (Keshishian Decl.) ¶¶ 10-11; Dkts. 15-4 through 15-9
(Keshishian Decl. Exs. D-I), "cartoon classics" appears to answer the
question "what are you" and is therefore a generic term and not a

protectible mark, <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 840 (9th Cir. 2001) (affirming district court finding of likelihood of success on claim of genericness where "the terms 'Firesafe' and 'Fire Safe' are widely used by third parties in the safe industry," "competitors use the term 'fire safe' to refer to a type or category of safe," and the defendant "itself had used the term in a generic sense"). Additionally, the '484 Application was amended to state that "[n]o claim is made to the exclusive right to use 'CARTOON CLASSICS' apart from the mark as shown." Dkt. 14-2 (RJN) Ex. 1 at 7.[6]  This fact supports Plaintiff's position that the phrase "cartoon classics" is, by itself, generic and not protectible.  Defendants do not meaningfully dispute that the term itself is not generic.

However, a "design, when used in connection with a word mark in such a way as to create in the minds of the consuming public a commercial impression, separate and apart from the word mark itself, may be protected as a separate mark." <u>Vision Sports, Inc. v. Melville Corp.</u>, 888 F.2d 609, 613 (9th Cir. 1989) (citing McCarthy on Trademarks and Unfair Competition § 7:8 at 200).  "Similarly, although color, per se, is generally not capable of trademark protection, it may be an essential element of a protected arrangement of colors, symbols, or words." <u>Id.</u> (citing McCarthy § 7:8 at 214).  Therefore, where "a logo has attained trademark significance independent of the words . . .[,] adoption of a confusingly similar format would constitute trademark infringement." <u>Id.</u>; <u>see also</u> <u>In Re Grande Cheese Co.</u>, 2 U.S.P.Q.2d 1447 (T.T.A.B. 1986)[7] ("where the unregistrable portions of a mark are presented in a distinctive display, the unregistrable portions may be disclaimed and yet the mark as a whole may be registrable"); <u>In Re Cosmetic Factory, Inc.</u>, 220 U.S.P.Q. (BNA) ¶ 1103 (T.T.A.B. Sept. 30,

---

[6] The Court GRANTS Plaintiff's unopposed request for judicial notice of records issued by the United States Patent and Trademark Office (USPTO) and the Copyright Office.  Fed. R. Evid. 201(b).

[7] "Decisions of the Patent Trademark Office Trademark Trial and Appeal Board are not binding but are to be given great weight." <u>Lahoti v. Vericheck, Inc.</u>, 636 F.3d 501, 506 n.1 (9th Cir. 2011).

1983) ("In order for a term otherwise unregistrable to be capable of distinguishing an applicant's goods, the presentation of the term must be sufficiently striking, unique or distinctive so as to overcome its inherent incapacity and render the mark capable of serving as a source indicator.").  A trademark "in [a] distinctive style does not entitle [the mark owner] to prevent a competitor from using the generic word . . . as part of a different trademark." Time Inc. v. Petersen Pub. Co., 976 F. Supp. 263, 264 (S.D.N.Y. 1997).

Plaintiff contends Defendants' design "fails to create a commercial impression apart from the generic term itself and remains unprotectable," Mot. at 14, and cites Grande Cheese as involving "much more elaborate designs of generic words," id. at 15.  In Grande Cheese, the Trademark Trial and Appeal Board affirmed the denial of a trademark with the words "Mozarella" and "Italian Cheeses" arranged with two boxes because "the background display [wa]s [not] sufficiently unique or distinctive to warrant registrability" where it "would [not] be perceived as anything more than a mere background design for the display of the words presented." 2 U.S.P.Q.2d 1447.  However, that the USPTO published Defendants' mark in the Trademark Official Gazette on June 16, 2020, Heldman Decl. Ex. 5, indicates that the USPTO disagrees with Plaintiff's position.  Plaintiff contends that "a Trademark Examiner's decision is entitled to little weight in court proceedings."  Mot. at 16 (citing Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 802 (9th Cir. 1970)).  However, Carter-Wallace held only that a "determination made by the Patent Office under the circumstances just noted must be regarded as inconclusive since made at its lowest administrative level and in light of the inconsistent position taken by plaintiff." 434 F.2d at 802 (emphasis).  Plaintiff also contends that "[t]he Examiner was . . . misled because Defendants withheld evidence that the stylized 'cartoon classics' term consists of public domain and generic Freestyle Script font and merely copied clipart eyes."  Mot. at 16.  But Plaintiff cites no evidence of what Defendants told the Examiner or what evidence the Examiner had.  Ultimately, the Court need not determine whether Defendants' logo is

entitled to trademark protection, because even if it were, Plaintiff's logo is not infringing.

To establish trademark infringement, the purported trademark owner "must show that it is '(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark.'" Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting Grocery Outlet Inc. v. Albertson's Inc., 497 F.3d 949, 951 (9th Cir. 2007) (per curiam)). Assuming, without concluding, that Defendants have a valid, protectable mark, the law and facts clearly favor the conclusion that Plaintiff's logo is not "confusingly similar" to Defendants' mark. To determine whether two marks are confusingly similar, courts in the Ninth Circuit apply the eight Sleekcraft factors, which are "neither exhaustive nor exclusive":

> (1) strength of the allegedly infringed mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) type of the goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the allegedly infringing mark; and (8) likelihood that the parties will expand their product lines.

E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir.1979)). "Similarity of the marks 'has always been considered a critical question in the likelihood-of-confusion analysis.'" JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1109 (9th Cir. 2016) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000)). The Ninth Circuit applies three "detailed axioms to guide this comparison: first, the marks must be considered in their entirety and as they appear in the marketplace . . . ; second, similarity is adjudged in terms of appearance, sound, and meaning . . . ; and third, similarities are weighed more heavily than differences." GoTo.com, 202 F.3d at 1206 (citations omitted).

Plaintiff contends that, to the extent Defendants' mark is protectible, "they can only prevent exact copying of the stylization," Mot. at 18 (citing McCarthy on Trademarks § 12:40), and in any event that parties' logos are "so irrefutably dissimilar that infringement cannot be found," id. (citing McCarthy on Trademarks § 11:30). Plaintiff contends, therefore, that in applying the first axiom, considering the marks "in their entirety and as they appear in the marketplace," "it is not improper to discount the similarity of descriptive or generic parts of conflicting marks." Id. (citing iCall, Inc. v. Tribair, Inc., No. C-12-2406 EMC, 2012 WL 5878389, at *7 (N.D. Cal. Nov. 21, 2012)). This, according to Plaintiff, leaves only the differences. The Court agrees. Defendants contends that Plaintiff's focus on use of the term "Cartoon Classics" ignores "the distinctive eye components of [Defendants'] mark . . . that plaintiff, out of the myriad of available options, has copied intentionally." Opp'n at 7. Defendants further contend that "it is readily apparent that the marks are confusingly similar" in that they "look and sound confusingly similar if not identical." Id. at 8 (citing Heldman Decl. ¶ 10). Defendants do not otherwise address any of the case law or examples cited by Plaintiff.

As shown below, both marks include the generic phrase "cartoon classics" and have substituted the two "o's" in "cartoon" with eyes. However, Plaintiff provides evidence that substituting the two "o's" in "cartoon" is common and is contained in many (now abandoned or canceled) marks. See RJN Exs. 6-12.[8] Therefore, contrary to Defendants' contention, mere inclusion of eyes is not a distinctive element of Defendants' mark. Moreover, the marks here contain different colors, different fonts, different capitalization and punctuation, different arrangement, and different eye styles. See Justice Decl. ¶ 23. The Court concludes that the visual appearance of the marks on the whole, as used in the marketplace, is noticeably different, particularly given that the actual words "cartoon classics" is

---

[8] The Court GRANTS Plaintiff's unopposed request for judicial notice of records made available by the USPTO. Fed. R. Evid. 201(b).

generic, not protectible, and specifically excluded from Defendants' trademark application.

 

BEYOND BLOND            DEFENDANTS

As to the other <u>Sleekraft</u> factors, the strength of the mark is weak because it has been explicitly limited to "the mark as shown." Heldman Decl. Ex. 5.  Although both logos are used on old cartoons to be sold or streamed on the internet, Plaintiff sells its videos on Amazon, while Defendants offer their videos on YouTube for free.  <u>See id.</u> ¶ 2.[9]  The Ninth Circuit has held that "arguments that Web users exercise a great deal of care before clicking on hyperlinks are unconvincing," <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1209 (9th Cir. 2000), but this factor weighs slightly differently here where Amazon charges a fee for its videos while YouTube users can watch videos for free.  There is no evidence that Plaintiff intended to confuse consumers when it created its logo, and Plaintiff has provided testimony that it was unaware of Defendants' logo, independently designed its own logo, and in any event would not want to associate itself with Defendants because its product is higher quality.  Justice Decl. ¶¶ 8-11, 21-22.[10]  Neither side has presented any evidence of actual confusion, marketing channels, other than the fact that the

---

[9] Although Defendants do not challenge this distinction, Plaintiff's Reply shows that at least some of Defendants' videos are or were available for sale on Amazon.  <u>See</u> Reply at 2 (cartoons were previously published by Defendants "for rent or purchase on Amazon"); <u>id.</u> at 8-9 ("Defendants also published and offered for sale videos that included *Pigs in a Polka* on their website and for rental and sale on Amazon in at least 2015 and 2016.").

[10] The Court has already concluded that Defendants' evidence that Plaintiff "has viewed and copied ComedyMX LLC's videos using the trademark at issue," Opp'n at 8, was adequately refuted by Plaintiff's evidence.

parties show their videos on different websites, or likelihood of expansion. Overall, the factors favor Plaintiff's position that its logo is not confusingly similar to Defendants' logo.

Therefore, the Court finds the facts and the law clearly favor Plaintiff's position that it is entitled to a declaration that its videos do not infringe Defendants' trademark.

### 3.    Section 512(f)

Plaintiff does not address its Section 512(f) claim separately from its copyright claim and Defendants do not address this claim at all. Because the Court has found Plaintiff is likely to succeed on its copyright and trademark declaratory relief claims, the Court need not consider Plaintiff's likelihood of success on its Section 512(f) claim at this time. See Morgan Stanley Smith Barney LLC v. Jacobs, No. 2:19-cv-04540-ODW (JCx), 2019 WL 2341654, at *2 (C.D. Cal. June 3, 2019) ("Plaintiff is not required to demonstrate it is likely to prevail on all of its claims for the issuance of a preliminary injunction.")

## B.    Irreparable Harm

Plaintiff has established a likelihood of irreparable harm if Defendants do not withdraw their takedown notifications. Plaintiff contends that it has suffered and will continue to suffer injuries such as "reputation, advertising efforts, loss of customers, ranking and reviews, termination as a repeat offender, [and] goodwill." Mot. at 21. Currently, when a customer searches Amazon for "cartoon classics," Plaintiff's listing appears but with a notification that the video is currently unavailable and that directs customers to Plaintiff's competitors. Justice Decl. ¶ 25. Additionally, Amazon has removed Plaintiff's other videos from recommendations. Id. ¶ 26. While this motion was pending, Defendants filed another takedown notice causing Amazon to independently take down two additional videos. Suppl. Justice Decl. ¶¶ 13-14 & Ex. 19. Reputational harm and loss of goodwill can be irreparable harm. See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.1991). So can threatened loss of prospective customers. See Stuhlbarg, 240

F.3d at 841.  Defendants' contrary contention that "[P]laintiff's motion fails to explain why monetary damages would be inadequate," Opp'n at 9, simply ignores Plaintiff's argument and evidence.  Therefore, the Court finds a likelihood of irreparable harm to Plaintiff.

## C.    Balance of Hardships

The balance of hardships also tips in favor of Plaintiff.  If the injunction is not issued, Plaintiff will suffer irreparable harm to its business as described above.  On the contrary, if Defendant withdraws its takedown notices and Plaintiff is allowed to make its videos available as it did before, Defendants can obtain money damages from Plaintiff if Plaintiff is in fact infringing Defendants' copyrights or trademark.  Defendants do not dispute this fact.

Defendants instead contend that "plaintiff's false representations that its videos are in the public domain could mislead the public to copy and reproduce the infringing videos *ad nauseum*."  Opp'n at 10.  First, Plaintiff has not represented that its videos are in the public domain, but only that it obtained the underlying content from the public domain.  And in any event, even if the preliminary injunction led others to further infringe on Defendants' rights, Defendants have not argued that infringement by others could not be resolved through money damages.

## D.    Public Interest

Defendants contend that "allowing plaintiff to resume infringement of ComedyMX LLC's trademark would likely cause consumer confusion."  Opp'n at 9-10.  However, the Court has concluded that the two logos are not confusingly similar and are not likely to cause consumer confusion.  Defendants also contend that "[i]t is not in the public interest or in the interest of equity to allow [P]laintiff to resume infringing the copyrighted works and trademark of ComedyMX LLC."  Opp'n at 10.  However, the Court has concluded that the law and facts clearly favor Plaintiff's claims of non-infringement.

On the other hand, as recognized in <u>Design Furnishings</u>, "the public interest is in fact benefitted by granting a TRO, because absent [Amazon's] policies, designed to avoid [Amazon's] liability for intellectual property infringement, it would be the claimed copyright holder who would bear the burden of proving the copyright infringement."  2010 WL 4321568, at *5.  "To withhold a TRO would allow anyone to effectively shut down a competitor's business on [Amazon] simply by filing the notice that the [competitor's] product allegedly infringes on the complaining party's copyright.  <u>Id.</u>

Moreover, the requested injunction here is consistent with the statutory scheme set up by the DMCA.  Under that scheme, once a user whose content was removed provides a "counter-notification," the service provider retains its liability exemption only if it timely replaces the removed content, unless the person who provided the takedown notice informs the service provider that it has filed a copyright infringement action.  <u>Vernor v. Autodesk, Inc.</u>, 621 F.3d 1102, 1106 (9th Cir. 2010) (citing 17 U.S.C. § 512(g)).  Although Amazon has not maintained its liability exemption by declining to replace Plaintiff's content even though Defendants had not initiated legal action, the Court finds it relevant that the balance struck by Congress encouraged rightsholders to bring any disputed copyright claims to court and not rely solely on DMCA notifications to pursue alleged infringers.

## E.    Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).   "The district court retains discretion 'as to the amount of security required, *if any*.'"  <u>Diaz v. Brewer</u>, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1086 (9th Cir. 2009)).  Rule 65(c) requires "the party affected by the injunction" to "present[] evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount

of the bond." <u>Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 321 F.3d 878, 883 (9th Cir. 2003).

Defendants request a bond of $300,000 representing "a statutory damages award for the copyrighted works" it alleges are being infringed.  Opp'n at 5.  Specifically, this includes the maximum award for willful infringement of two copyrights.  <u>Id.</u> at 10 ("$150,000 each for, at least, its uses of the copyrighted derivative works of "Ancient Fistory" and "Pigs in a Polka").  However, Defendants are not suing for copyright infringement and have cited no cases supporting the position that defeating a declaratory relief action for non-infringement entitles them to statutory damages for infringement of those copyrights.  Therefore, their damages from being wrongfully enjoined or restrained do not include statutory damages that they may otherwise be entitled to if they ultimately brought, and succeeded on, a claim for copyright infringement.  Defendants have not provided any other evidence that they would suffer damages by issuance of the injunction, such as loss of estimated royalty payments.  <u>See</u> <u>Design Furnishings</u>, 2010 WL 5418893, at *9 (requiring $100,000 bond based on estimated 50% royalty on $200,000 of annual profits).  The "bond amount may be zero if there is no evidence the party will suffer damages from the injunction." <u>Connecticut Gen.</u>, 321 F.3d at 882 (citing <u>Gorbach v. Reno</u>, 219 F.3d 1087, 1092 (9th Cir.2000)).  Defendant has provided no evidence that a bond is needed, and therefore the Court exercises its discretion not to require one.

## IV. PRELIMINARY INJUNCTION

For the foregoing reasons, IT IS ORDERED that the request for a preliminary injunction is GRANTED as follows:

Within 15 days of this Order, Defendants shall notify Amazon that they are withdrawing, without prejudice to re-filing if they ultimately prevail in this lawsuit, their intellectual rights notices or takedown notices involving the following Amazon Case Numbers:

Cartoon Classics #1 6890999701

Cartoon Classics #2 6891043541

Cartoon Classics #3 6891006641

Cartoon Classics #4 6890994521

Cartoon Classics #5 6891030291

Cartoon Classics #6 6891048961

Patriotic Cartoon Classics 7205014561

The withdrawal request should 1) request that Amazon restore Plaintiff's videos with the same rankings, client reviews, and customer comments as prior to the takedown and 2) include a copy of this Order.

IT IS FURTHER ORDERED that Defendants, and their respective officers, directors, employees, agents, subsidiaries, attorneys, and all persons in active concert or participation with Defendants, are preliminarily enjoined from issuing takedown notices concerning the seven videos described above or otherwise notifying Amazon that Defendants have copyrights or trademarks in the videos offered for sale by Plaintiff and that Plaintiff's sales violate those copyrights or trademarks.

IT IS SO ORDERED.

Date: August 14, 2020

Dale S. Fischer
United States District Judge

**EXHIBIT C**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, <br>   Plaintiff, <br><br> v. <br><br> EDWARD HELDMAN III, et al., <br>   Defendants. | CV 20-5581 DSF (GJSx) <br><br> Order GRANTING Beyond Blond's *Ex Parte* Application for Contempt, Enforcement of the Preliminary Injunction Order, Compensation for Damages, and Attorneys' Fees and Costs (Dkt. 205) |

Plaintiff Beyond Blond Productions, LLC (Beyond Blond) submitted an *ex parte* application for contempt against Defendants Edward Heldman III, ComedyMX, Inc., and ComedyMX, LLC (collectively, Defendants). Dkt. 205 (App.). Defendants oppose. Dkt. 214 (Opp'n). For the reasons stated below, Beyond Blond's application is GRANTED.

On August 14, 2020, the Court granted Beyond Blond's motion for preliminary injunction. Dkt. 25 (Preliminary Injunction Order).

The Court has reviewed the parties' briefs and has determined that Defendants violated the Court's Preliminary Injunction Order. Defendants are ORDERED to withdraw immediately all takedown notices issued to Amazon.com anywhere in the world for Beyond Blond's following seven videos:

- Cartoon Classics - Vol. 1: 25 Favorite Cartoons - 3 Hours,

- Cartoon Classics - Vol. 2: 25 Favorite Cartoons - 3 Hours,

- Cartoon Classics - Vol. 3: 25 Favorite Cartoons - 3 Hours,

- Cartoon Classics - Vol. 4: 25 Favorite Cartoons - 3 Hours,

- Cartoon Classics - Vol. 5: 25 Favorite Cartoons - 3 Hours,

- Cartoon Classics - Vol. 6: 25 Favorite Cartoons - 3 Hours,

- Patriotic Cartoon Classics: 25 All-American Cartoons from World War II

The withdrawal request should (1) request that Amazon restore Plaintiff's videos with the same rankings, client reviews, and customer comments as prior to the takedown and (2) include a copy of this Order.

By April 11, 2022, Beyond Blond is ORDERED to submit a request for fees and costs associated with filing the instant Application (Dkt. 205). The request must be submitted pursuant to the Court's 2021 Order re Requirements for Fee Motion.

It is further ORDERED that Defendants shall be sanctioned in the amount of $500 per day payable to the Court, beginning from March 11, 2022 through the date Amazon restores the seven videos as they appeared before they were taken down on March 11, 2022.

The Court will consider the issue of damages based on a further submission when this Order has been complied with.


IT IS SO ORDERED.


Date:  March 30, 2022

_____

Dale S. Fischer
United States District Judge

2

# EXHIBIT D

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, a California limited liability company;<br><br>      Plaintiff,<br><br>      vs.<br><br>EDWARD HELDMAN III, an individual; COMEDYMX, INC., a Nevada corporation; COMEDYMX, LLC, a Delaware limited liability company; and DOES 1-10;<br><br>      Defendants.<br><br>And related claims. | CASE NO.: 2:20-cv-05581 DSF (GJSx)<br><br>**ORDER GRANTING BEYOND BLOND'S PRELIMINARY INJUNCTION** |

Defendants Edward Heldman III, ComedyMX, Inc., and ComedyMX, LLC (collectively "Defendants"), are enjoined during the pendency of this lawsuit from:

- sending threatening or harassing emails to Milord Keshishian or others at his law firm, Michelle Justice, and persons known by Heldman to be Justice's former or current business associates, including Tim Branom;
- posting threatening or harassing content about Beyond Blond's counsel or employees on http://milordshysterlaw.epizy.com/, Google reviews, Yelp.com, Lawyers.com, Avvo.com, or on any other publication, website, online forum, social media, or review applications;
- coming within 100 feet of Justice or Beyond Blond's counsel, except when in court;
- coming within 100 feet of Justice's residence or Beyond Blond's counsel's office;
- directing others to do any of the foregoing acts on Defendants' behalf.

Defendants are also **ORDERED** to remove prior false, racist, homophobic, threatening, and/or harassing content referencing Beyond Blond, Ms. Justice, or their counsel and counsel's employees, including posts at http://milordshysterlaw.epizy.com/ and https://www.yelp.com/not_recommended_reviews/milord-and-associates-los-angeles-2.

Defendants are **ORDERED** to refrain from transferring or encumbering any assets, including the following YouTube video channels and Amazon listings:

https://www.youtube.com/user/8thManDVDcom
https://www.youtube.com/channel/UCisLEYSLcfuarGXULo5JpIw
https://www.youtube.com/user/TheCartoonChannelAU
https://www.youtube.com/channel/UCvndcMEV8BUwebUPJ3yifAw
https://www.youtube.com/channel/UCwUlit_Tlx3HsgfDX_ladJg
https://www.youtube.com/user/caferoxyfilms

-1-

**ORDER GRANTING BEYOND BLOND'S EX PARTE APPLICATION**

1    https://www.youtube.com/channel/UCNCAEXQK6M8wU0kOcFa6gng
2    https://www.youtube.com/c/ActionAdventureTVShows
3    https://www.youtube.com/channel/UC-Z1HJ46VKVZgmKBWixhlrg
4    https://www.youtube.com/channel/UCGIajzt5PiO0vwIkve49VrA
5    https://www.youtube.com/channel/UCcw25dozUY-4JRj68CjoQmg
6
7    https://www.amazon.com/gp/product/B019QFBS3M
8    https://www.amazon.com/gp/product/B013IYCKP2
9    https://www.amazon.com/Clip-BIGGEST-1937-1943-Golden-Era-
10   Collection/dp/B014LG5TQ8
11   https://www.amazon.com/How-8th-Man-Came-
12   Unavailable/dp/B00W02WJNM/
13   https://www.amazon.com/Tobor-Original-Anime-Remastered-
14   Restored/dp/B001DBB090/
15   https://www.amazon.com/Tobor-Original-Anime-Remastered-
16   Restored/dp/B01G18PW2K/
17   https://www.amazon.com/Tobor-Original-Anime-Remastered-
18   Restored/dp/B001PUYG8Q/
19   https://www.amazon.com/Tobor-Original-Anime-Remastered-
20   Restored/dp/B01FYXTK9E
21   https://www.amazon.com/Tobor-Original-Anime-Remastered-
22   Restored/dp/B00W62UY2Y/
23   https://www.amazon.com/Tobor-Original-Anime-Remastered-
24   Restored/dp/B00W62YDNU/
25   https://www.amazon.com/Tobor-Original-Anime-Remastered-
26   Restored/dp/B002ZYNPCY/
27   https://www.amazon.com/Tobor-Original-Anime-Remastered-
28   Restored/dp/B00W62XB0Q/

ORDER GRANTING BEYOND BLOND'S EX PARTE APPLICATION

1        https://www.amazon.com/Tobor-Original-Anime-Remastered-
2        Restored/dp/B00W62TVSW/

3        Beyond Blond is awarded attorneys' fees for filing this reply. The amount of fees
4 requested shall be submitted under the provisions of the Court's standing 2021 Order Re
5 Requirements for Fee Motion.

6        Beyond Blond's previously posted bond in the amount of $1,000 shall remain in
7 place for the payment of such costs and damages as may be incurred or suffered if
8 Defendants are found to have been wrongfully enjoined. See Fed. R. Civ P. 65(c).

9        The parties are ordered to meet and confer in an attempt to agree on a means of
10 freezing payments due from the above channels and listings until further order of this
11 Court, and an appropriate amount to be frozen. If the parties are unable to agree,
12 submissions on this subject must be filed no later than August 8, 2022.

14      **IT IS SO ORDERED.**

16 Dated: July 19, 2022

18       Honorable Dale S. Fischer
19       UNITED STATES DISTRICT JUDGE

-3-

**ORDER GRANTING BEYOND BLOND'S EX PARTE APPLICATION**

# EXHIBIT E

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 12:20 PM |
| **To:** | Milord Keshishian |
| **Cc:** | 'Michelle Justice' |
| **Subject:** | RE: re: FYI idiots |

Never mind the pending claims and DMCA take downs going on w/ C<X/ They are so guilty of copyright infringement Google NEEDS to shut them down. They are guilty because I cannot fight them.

You two are idiots. You wil get nothing. Fucking scum bags, all you two will get is judgements.

I will admit to Google we are wrong. They need ti demonetize us, CMX committed copyright infringement.

You two were born yesterday. You know nothing about this business.

Not to mention ALL your public filings of my e-mails, yeah, liberal Google will just love me. Yeah bite the hand that feeds you!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 10:13 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** RE: re: FYI idiots

FYI your BIAS Lesbo judge never said I can't remove CMX videos (which we own the copyrights to) nothing in that order asshole.

Trump channels is what we will become.

You are going to try and get this NAZI courts to order me to not be able to post my Trump videos? And criticize the US government? Really? Lets see that. You fucking communist liberal bastards!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 8:13 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** re: FYI idiots

I can also start posting videos about this fucking case. That's again public info.

You both think YouTube and my subscribers will like everything YOU idiots filed?

There is no chance I won't get DEMONETIZED?

Are you two on drugs??

This isn't Amazon where THEY publish the videos, this is fucking social media like Facebook. The fucking motions you filed wanted me to get demonetized, uh, why don't you ask? I can do that ASAP.

1

FYI Auxmode is not happy. They want out. They aren't in this fucking country, why should I stop that? WTF is in it for me?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 12:13 PM |
| **To:** | Milord Keshishian |
| **Cc:** | 'Michelle Justice' |
| **Subject:** | RE: re: FYI idiots |

FYI your BIAS Lesbo judge never said I can't remove CMX videos (which we own the copyrights to) nothing in that order asshole.

Trump channels is what we will become.

You are going to try and get this NAZI courts to order me to not be able to post my Trump videos? And criticize the US government? Really? Lets see that. You fucking communist liberal bastards!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 8:13 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** re: FYI idiots

I can also start posting videos about this fucking case. That's again public info.

You both think YouTube and my subscribers will like everything YOU idiots filed?

There is no chance I won't get DEMONETIZED?

Are you two on drugs??

This isn't Amazon where THEY publish the videos, this is fucking social media like Facebook. The fucking motions you filed wanted me to get demonetized, uh, why don't you ask? I can do that ASAP.

FYI Auxmode is not happy. They want out. They aren't in this fucking country, why should I stop that? WTF is in it for me?

**Amy Brown**

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 1:41 PM |
| **To:** | Milord Keshishian; 'Michelle Justice' |
| **Subject:** | re: Make up your bi0ploar minds |

You two fucking idiots make NO business or common sense. You file e-mails allegedly by me that libtard Google will just love and try to get an order that I send Google that will demonetize CMX channels. That's fine.

You morons go out of your way to get bogus court orders that prevent me from deleting the channels.

Do you want them shut down or not?

If all you want is for me to shut down the stupid channels, just ask. We could do a settlement like that. I close CMX and we do a walk away.

You keep contradicting yourselves demanding $600k for fraudulent damages and bogus atty fees (you've never paid your partner shit) and keep refusing to show a single dime you spent.

You are bipolar! WTF do you morons want? To close CMX or to keep it in business and get paid? Fucking make up your minds. Soon it will be demonetized.

Fucking twits!

1

| | |
|---|---|
| From: | Edward Heldman III <eheldman3@yahoo.com> |
| Sent: | Sunday, December 4, 2022 12:54 PM |
| To: | Milord Keshishian; Michelle Justice |
| Subject: | Re: Disney |

No I didn't forget. I know you represented Disney your only real big client in 1 case.

Maybe you should talk to them about my infringement about Ms Piggy? Maybe you could get those libtards to sue me for claiming Justice looks like her?

That's a typical communist hitler china loving move.



Edward Heldman III
Sent from my iPhone

**Amy Brown**

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 12:27 PM |
| **To:** | Milord Keshishian; Michelle Justice |
| **Subject:** | Trump rules! |



Edward Heldman III
Sent from my iPhone

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 12:25 PM |
| **To:** | Milord Keshishian; Michelle Justice |
| **Subject:** | China can't steal your IP |



Fucking god damn libtards!

Edward Heldman III
Sent from my iPhone

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 10:13 AM |
| **To:** | Milord Keshishian |
| **Cc:** | 'Michelle Justice' |
| **Subject:** | re: FYI idiots |

I can also start posting videos about this fucking case. That's again public info.

You both think YouTube and my subscribers will like everything YOU idiots filed?

There is no chance I won't get DEMONETIZED?

Are you two on drugs??

This isn't Amazon where THEY publish the videos, this is fucking social media like Facebook. The fucking motions you filed wanted me to get demonetized, uh, why don't you ask? I can do that ASAP.

FYI Auxmode is not happy. They want out. They aren't in this fucking country, why should I stop that? WTF is in it for me?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 10:03 AM |
| **To:** | Milord Keshishian |
| **Cc:** | 'Michelle Justice' |
| **Subject:** | RE: re: Trump Videos |

FYI your God is a jew.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 8:00 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** RE: re: Trump Videos

You cannot win against someone who is protected by the US Constitution. You cannot defeat someone who doesn't give a damn about the law.

I followed the law, registered my copyrights and trademarks, where the fuck did it get me?

Just took 2 bias FEMALE judges (women hate men unless you are gay) who have power.

It was my grandmother (a woman) who told me when I was very young, that woken in power cannot handle it. They are to fucking emotional.

That was from a woman. My grandmother was the closest thing I had in my life. I miss her, she was a goddess.

Fuck you both! If there is a Hell like you so-called Christians think, I hope you both go there!

Ed

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 7:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** RE: re: Trump Videos

YouTube is a social media platform it isn't Amazon you Morons!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 7:48 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** re: Trump Videos

Due to my 1st Amendment rights, there is NO court order and nor will there ever be that CMX channels cannot start posting "Pro Trump" videos esp from me personally.

I promise you that is what will happen if you keep litigating this case.

CMX channels will be filled w/ "Pro Trump" videos ny me personally and other PD/Fair use vids. YouTube will demonetize it.

You CANNOT stop my 1st Amendment rights you lousy dirty Communist China Loving Socialist POS! You and MS Piggy!

As I promised Ms Piggy and You will get nothing but a fucking Judgement!

Block senders or mark email as junk in Outlook.com
https://support.microsoft.com/en-us/office/block-senders-or-mark-email-as-junk-in-outlook-com-a3ece97b-82f8-4a5e-9ac3-e92fa6427ae4

Block or unblock senders as junk email
https://www.godaddy.com/help/block-or-unblock-senders-as-junk-email-40377

Ed

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 10:00 AM |
| **To:** | Milord Keshishian |
| **Cc:** | 'Michelle Justice' |
| **Subject:** | RE: re: Trump Videos |

You cannot win against someone who is protected by the US Constitution. You cannot defeat someone who doesn't give a damn about the law.

I followed the law, registered my copyrights and trademarks, where the fuck did it get me?

Just took 2 bias FEMALE judges (women hate men unless you are gay) who have power.

It was my grandmother (a woman) who told me when I was very young, that woken in power cannot handle it. They are to fucking emotional.

That was from a woman. My grandmother was the closest thing I had in my life. I miss her, she was a goddess.

Fuck you both! If there is a Hell like you so-called Christians think, I hope you both go there!

Ed

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 7:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** RE: re: Trump Videos

YouTube is a social media platform it isn't Amazon you Morons!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 7:48 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** re: Trump Videos

Due to my 1st Amendment rights, there is NO court order and nor will there ever be that CMX channels cannot start posting "Pro Trump" videos esp from me personally.

I promise you that is what will happen if you keep litigating this case.

CMX channels will be filled w/ "Pro Trump" videos ny me personally and other PD/Fair use vids. YouTube will demonetize it.

You CANNOT stop my 1st Amendment rights you lousy dirty Communist China Loving Socialist POS! You and MS Piggy!

As I promised Ms Piggy and You will get nothing but a fucking Judgement!

1

Block senders or mark email as junk in Outlook.com
https://support.microsoft.com/en-us/office/block-senders-or-mark-email-as-junk-in-outlook-com-a3ece97b-82f8-4a5e-9ac3-e92fa6427ae4

Block or unblock senders as junk email
https://www.godaddy.com/help/block-or-unblock-senders-as-junk-email-40377

Ed

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 9:50 AM |
| **To:** | Milord Keshishian |
| **Cc:** | 'Michelle Justice' |
| **Subject:** | RE: re: Trump Videos |

YouTube is a social media platform it isn't Amazon you Morons!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Sunday, December 4, 2022 7:48 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Cc:** 'Michelle Justice' <michelle@beyondblond.com>
**Subject:** re: Trump Videos

Due to my 1st Amendment rights, there is NO court order and nor will there ever be that CMX channels cannot start posting "Pro Trump" videos esp from me personally.

I promise you that is what will happen if you keep litigating this case.

CMX channels will be filled w/ "Pro Trump" videos ny me personally and other PD/Fair use vids. YouTube will demonetize it.

You CANNOT stop my 1st Amendment rights you lousy dirty Communist China Loving Socialist POS! You and MS Piggy!

As I promised Ms Piggy and You will get nothing but a fucking Judgement!

Block senders or mark email as junk in Outlook.com
https://support.microsoft.com/en-us/office/block-senders-or-mark-email-as-junk-in-outlook-com-a3ece97b-82f8-4a5e-9ac3-e92fa6427ae4

Block or unblock senders as junk email
https://www.godaddy.com/help/block-or-unblock-senders-as-junk-email-40377

Ed

**Amy Brown**

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 8:37 AM |
| **To:** | Milord Keshishian |
| **Subject:** | re: BB Ownership |

As YOU know I have had more attorneys than you even know. I know for a FCAT no attorney is going to result to repeatedly lying under oath, black mailing and violating the AEO because they were paid cash. You own Beyond Blond. That is obvious. You haven't gotten paid, at least in full.

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Sunday, December 4, 2022 7:56 AM |
| **To:** | Milord Keshishian |
| **Subject:** | re: Think about it |

Ni Jury, No trial, No option to appeal. That's America huh? The country you came to from Armenia. Wanting a better life.

Well, you voted for Biden, you are gay and you are a dirty Libtard who seeks socialism.

If you get your way, you will be working for the Government as private atty and civil rights will go away.

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Friday, December 2, 2022 8:51 PM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: ComedyMX consensual plan proposal - urgent |

Tim Cook: China is a wonderful country! They remind me of the great Germany.

Milord: Mr. Cook. Do you mean the wonderful Germany when our "great Führer" was in charge?

Tim Cook: Yes. It is very sad that Germany fell. They had the potential to be greater than the USA.

Milord: I have a client who loves the great Führer. Being Armenian I agree 100%. The great Führer could have made Germany like China. It is very sad the USA prevented that.

Tim Cook: Really? Who is this wonderful client, may I ask?

Milord: Her name is Ms. Piggy Justice. I know not quite a German name but she speaks German, that counts for a lot!

Tim Cook: Wonderful! I'm a good ole Brit, not very German either like your Irishman Justice. But since German's conquered Britain it's safe to say I am mostly German.

Milord: I wouldn't know. I am to busy with my culture, Armenians. I am sure Brits and Germans have an interesting history.

Tim Cook: We do.

Milord: Hail Great Führer!

Tim Cook: [Sieg Heil salute]

Milord: I'm a homosexual.

Tim Cook: Me too.

Milord: Sexy! I am actually drag and love to entertain little boys.

Tim Cook: ditto! I never show my drag in public 😊 shhhhhhhh!

Milord" you bad boy! [Sieg Heil salute]


**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Friday, December 2, 2022 6:33 PM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: ComedyMX consensual plan proposal - urgent

Sorry Hunter isn't a gayboy though, hmm maybe you get "Tim Cook" to run? He'd be perfect! Tim is probably the best Nazi I know, he loves china!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Friday, December 2, 2022 6:31 PM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: ComedyMX consensual plan proposal - urgent

Oh yeah I forgot Biden just loves Jews doesn't he? The tides will turn and your Biden won't get reelected, that is quite obvious.

You'd love to defend Hunter wouldn't you? You know the "great Artist" who also happens to be a crack head, loves hookers and sells his "art" to other countries for millions. Come on everyone wants to buy art from a crack head, that's common. The more crack you smoke and hookers you fuck, the better "art" you do.


**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Friday, December 2, 2022 6:26 PM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: ComedyMX consensual plan proposal - urgent

Make sure you file some SLAPP claims, that worked great for you. There is nothing better than suing someone for "freedom of speech".

FYI you dirty Nazi Socialist bastards, court order only stated I cannot post anon reviews about you. I deny since I had to DMCA those. It said nothing about Memes which is protected by 1st Amendment.

You can't stop that. Granted I did not post any memes, that is so childish. I prefer to e-mail you much more enjoyable.

You are such a rotten communist! You, German Justice and Standish are all clearly Nazis and anti-Semitic!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Friday, December 2, 2022 5:46 PM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: ComedyMX consensual plan proposal - urgent

Yeah MiDick there isn't going to be a settlement. To date I have seen NO damages at all, no evidence you are not a partner of Beyond Blond (i.e. he stole my font).

You are a fraud and a crook. Only reason you won is you are gay and she is a gay woman.

That's not law. That's bias political BS.

I see all you've done lately is now defend trademark infringers, what happened? I thought you were BIG IP prosecutor?

Whatever happened to your BIG 512f defending Amazon sellers? To date you have had 0 cases of 512f, now do you see there is NO money in it?

This case will never settle.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Friday, December 2, 2022 5:37 PM

**Subject:** RE: ComedyMX consensual plan proposal - urgent

Sandy,

The issue I cannot live with under ANY circumstances is Beyond Blond ( a fraud and a liar) will make MORE money than the company's founder, CEO and head. I would rather it go to liquidation or face Fischer and appeal.

Look at it from my perspective. I spent 15 years (started this in 2007) and kept building it up, saving money, living overly frugal, investing in retirement. Not 1 person helped me out, I am 100% self made, no one helped me at all. When I needed $10k to start it was my parents who loaned me the money. All I did was follow the law, registered my copyrights and trademarks etc. where did it get me? I learned it that it doesn't pay to be honest or follow the fucking law. I learned "crooks" and "frauds" win". Just steal someone's work and get a Judge in liberal CA to say it's invalid, take away your privileges and rights etc. and you win. There will never be a trial, no jury, no one but 2 bias judges will decides your fate. This is what our country has become? **Is this what our fore fathers wanted?**

I know what makes business sense. How about "kissing ass" up the big corporate ladder as opposed to blowing up bridges, telling micro management to go fuck themselves and working for yourself? Chances are not great are they? That's who I am and nothing can change that. I worked in corporate, I played that game for a short time and realized I can't work for anyone. It took me years of pain staking work w/o ANY one ever helping me. I am self made.

2 corrupt CA judges let someone steal my IP, simply rule it's "generic" (even Randy agrees Appeal court will reverse her dismissal), no Jury sees it etc. and I need to be a "good guy" and think "rationally".

I got my GED, I am dyslexic and wasn't able to graduate like everyone else. My father sued the public school system, my whole life I had nothing. I don't mean to toot my own horn like I am biggest shit and everyone needs to kiss my ass, but I worked hard for this. So much that I would rather lose it all and go down fighting than pay her more money than I make and be a slave to a fraud and a crook for next fucking 5 years.

Honestly I don't want to settle at all. I'd be happier making $5k and ends meat for next 7 years as long as she is getting nothing.

For me Sandy it isn't about the money. It's someone stole something from me, then sued me and is legally abusing the law to get everything I worked for.

It's hard. This country let me down BIGTIME. The law? It's a joke. More like the Judge.

3

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Wednesday, November 16, 2022 6:03 AM |
| **To:** | 'Michelle Justice' |
| **Cc:** | Milord Keshishian |
| **Subject:** | re: delusional |

Hmm no wonder why you 2 own BB.

A gay guy who claims he's a playboy Armenian (even though he's clearly Black) and a German American a Gay Woman who think she looks like Marilyn Monroe (though she's a little on the old side and clearly and looks like Ms Piggy),

You two are delusional. Keep believing what you want.

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Wednesday, November 16, 2022 2:58 AM |
| **To:** | Michelle Justice |
| **Cc:** | Milord Keshishian |
| **Subject:** | Trump 2024!!!! |

Right from your communist news network you dirty libttards love to watch

https://amp.cnn.com/cnn/2022/11/15/politics/trump-2024-presidential-bid/index.html

Edward Heldman III
Sent from my iPhone


On Nov 15, 2022, at 11:56 PM, Edward Heldman III <eheldman3@yahoo.com> wrote:


You don't owe me any money, this is freebie. No worries and I so happy to help. You can License Ms Piggy from here, unless you want to STREAL it like crook you are, then sue and claim it's "generic".
Maybe you'll get lucky and get Fischer,
https://www.disneystudiolicensing.com/

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Tuesday, November 15, 2022 11:10 PM
**To:** 'Michelle Justice' <michelle@beyondblond.com>
**Cc:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** re: Ms Piggy
Marilyn Monroe? Uh..you are a little FAT and Ugly for that one (I'; d be gay too) I think you need to use Ms Piggy for your brand.
BTW if I was an ugly blady like Milord I'd be a gay man. But I'm not. I am actually good looking.

1



| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Wednesday, November 16, 2022 12:59 AM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: Tank Satndish? |

No! I am not going to sign any BS that gives you an automatic Judgment for $1 million. Are you nuts?

You think I am stupid! I refuse to be setup to I wasn't born yesterday you Armenian fuck! You and that FAT fucking German, uh I'd be gay too if I was bald and ugly and was a HUGE woman who is equally unattractive.

Do me a favor? Tell your crazy client, she is NOT Marilyn Monroe she's more like Ms Piggy!

Ed

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Tuesday, November 15, 2022 10:53 PM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: Tank Satndish?

If that fucking bias Magistrate (aka wannabe district court judge) didn't waive my privileges – we'; d still be going at it. I am innocent of 512F Tiu lying sack of shit.

Granted Ivan fucked it up. I gave him ALL my e-mails to make a privilege log, he submitted nothing., He claimed he would file a motion for reconsideration, and nothing. I got fucked by him.

You wind up with a wannabe English bitch who hates Jews, lucky you. You and your "partner" who own BB want to destroy me! Not about money that's obvious.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Tuesday, November 15, 2022 10:45 PM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** Tank Satndish?

Going to thank Standish? Some ,magistrate wannabe district court judge who's anti-Semitic single handling won you the case?

Fucking BS.

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Thursday, November 10, 2022 4:23 AM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: you really want to play this game? |

You're lucky about the Gumby, yeah the syndicated 1960's re-dub LOL You two are PD experts!

I won't mention stealing my logo, which isn't theft if you make it PD.

USPTO says it's not, German says it's not. UK says no, AU says no.

So 1 Judge in US who is gay and a liberal from CA and clearly bias says Milord is right? Lol Only reason I can't sue is your stupid PI. That will end and I will be able to sue and complain to Amazon in other countries. You won't get that to stay forever.

If you do, I will move anyway and US court has no jurisdiction if I sue in other countries.

You are the world. Your Judge is not the world. WIPO is not the US.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 2:19 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Good luck getting Ron to work for you. Just sue the 80 year old man who doesn't know a thing about this and offer him a job LOL

So who are you going to get to deal with all those daily claims? We've seen what a PD expert you and Justice are lol You two think Andy Griffith is copyrighted and colorized cartoons from WB are PD lol

Good luck with running CMX

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:47 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Honestly, It sounds to me you will be happy if I shut down CMX, why don't we do that? I offered to and you get a court order that I cant. Then you seek a new court order to do just that. You make zero fucking sense, that's what being dirty liberal is about.

You liberals love to kill unborn babies but you won't go 10 feet near capital punishment lol you are a bunch of screwballs.

Please tell me you want C<X shut down, I owe you no money and we can make a deal.

Otherwise all you will get is a judgment. 50 years if I actually remain in the US, no way I am stating in this looney country.

1

If you want $600k why do you refuse and make up all this BS that will lead you to a 50 year judgment you can never collect? If you want CMX shut down, tell me.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:28 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I need to terminate my contract w/ Google because they also support the LGTBQ+. I have a religious right. You and this Judge cannot stop that.

You also cannot force me or anyone to exploit their IP publicly. It's art and I do not want my art displayed anymore.

There's a million ways I can fucking shut this shit down, are you serious? You think I won't do it?

If that's all you want to settle, drop the money and ask me to do it. This isn't rocket science.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:24 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Uh yea I don't advise deposing your "key" person who runs CMX channels from claims. When Ron is gone you will lose more videos than you can count.

You own CMX or it could pay you $600k.

Just like trying to demonetize it, you aren't exactly making any business sense. You are cutting off your own foot to spite your hand. Yeah you can do it but you wind up w/ nothing.

I am not fucking doing Ron's job and you cant hire anyone to do it because you don't own CMX do you?

What can the CEO tell you about C<X and it's copyright infringement and other issues, why it needs to be shut down (YouTube violations etc)?

I can do better than that. I can show you.

As I said you have no idea what you are dealing with. If all you want is a judgement and C<X shit down, tell me I will do ASAP. I don't want this crooked company, it's a liability.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:14 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

You want to play by law, we can play by law. I have I got a story for Google and the court about what ComedyMX really is.

You refuse to settle? Lol you are such a moron. You will regret it. CMX will fall.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:12 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Don't think for a moment I will not sign a declaration that ComedyMX are a bunch of copyright infringers. CBS sued them as you claimed CBS was right.

What about the hundreds of Content ID claims and DMCAs they get everyday?

I will testify I believe ComedyMX are copyright infringers and Google needs to demonetize and terminate the channels. I can prove that they are.

You will get NOTHING!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:05 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think you need to tell in your Depo that he's…terminated. Because he supports LGBTQ+ and to go work for BB.

Let's see how that works out for you and your channels you seem to think you own.

It's such an easy business right? Just like Amazon lol

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:59 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think ComedyMX is a big copyright infringer. Because they get claims every day on hundreds of videos. I think those videos need to be deleted and I also think ComedyMX needs to start paying those people.

What do I know? I am not an attorney and not a PD expert, think they are PD but sounds like I am wrong.

Why am I paying Ron? Why don't you pay him since you claim they are your channels? Judge even said they belong to you. Why don't you tell Google how you own them?

I am NOT keeping someone who supports a terrible sin on my payroll period! Jail does not scare me I told you that. Death does not scare me either. Both scare you. We are very different. Fear keeps you in bondage, I have no fear in case you haven't noticed.

Your Judge can order me to jump off a bride. I won't do it. As for your "channels" they were never yours and never will be.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** you really want to play this game?

FYI I spoke to Ron Hall and he supports the LGBTQ+. I am going to have to fire him. Who is going to run your channels w/ Fraud 512F claims?

Are you? You're going to pay him?

Are you going to get your "God Complex Judge" to order Ron Hall to keep working for me even though he supports LGBTQ+? I can't fire him and have to deal with God as my Judge and not be afraid of this corrupt country?

Or are you going to get your "God Complex" judge to order me to actually work at it? I don't know, I think I am wrong about ALL the claims and those videos ALL need to be deleted.

Do you want to play this game? You will get NOTHING but a Judgment!

I cannot keep paying anyone to keep up w/ daily BS claims, though I think I maybe an infringer. I need to start deleting every video b/c someone makes a claim. On YouTube.

What do I know?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Thursday, November 10, 2022 3:12 AM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: you really want to play this game? |

Don't think for a moment I will not sign a declaration that ComedyMX are a bunch of copyright infringers. CBS sued them as you claimed CBS was right.

What about the hundreds of Content ID claims and DMCAs they get everyday?

I will testify I believe ComedyMX are copyright infringers and Google needs to demonetize and terminate the channels. I can prove that they are.

You will get NOTHING!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:05 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think you need to tell in your Depo that he's...terminated. Because he supports LGBTQ+ and to go work for BB.

Let's see how that works out for you and your channels you seem to think you own.

It's such an easy business right? Just like Amazon lol

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:59 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think ComedyMX is a big copyright infringer. Because they get claims every day on hundreds of videos. I think those videos need to be deleted and I also think ComedyMX needs to start paying those people.

What do I know? I am not an attorney and not a PD expert, think they are PD but sounds like I am wrong.

Why am I paying Ron? Why don't you pay him since you claim they are your channels? Judge even said they belong to you. Why don't you tell Google how you own them?

I am NOT keeping someone who supports a terrible sin on my payroll period! Jail does not scare me I told you that. Death does not scare me either. Both scare you. We are very different. Fear keeps you in bondage, I have no fear in case you haven't noticed.

Your Judge can order me to jump off a bride. I won't do it. As for your "channels" they were never yours and never will be.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** you really want to play this game?

FYI I spoke to Ron Hall and he supports the LGBTQ+. I am going to have to fire him. Who is going to run your channels w/ Fraud 512F claims?

Are you? You're going to pay him?

Are you going to get your "God Complex Judge" to order Ron Hall to keep working for me even though he supports LGBTQ+? I can't fire him and have to deal with God as my Judge and not be afraid of this corrupt country?

Or are you going to get your "God Complex" judge to order me to actually work at it? I don't know, I think I am wrong about ALL the claims and those videos ALL need to be deleted.

Do you want to play this game? You will get NOTHING but a Judgment!

I cannot keep paying anyone to keep up w/ daily BS claims, though I think I maybe an infringer. I need to start deleting every video b/c someone makes a claim. On YouTube.

What do I know?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Thursday, November 10, 2022 4:19 AM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: you really want to play this game? |

Good luck getting Ron to work for you. Just sue the 80 year old man who doesn't know a thing about this and offer him a job LOL

So who are you going to get to deal with all those daily claims? We've seen what a PD expert you and Justice are lol You two think Andy Griffith is copyrighted and colorized cartoons from WB are PD lol

Good luck with running CMX

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:47 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Honestly, It sounds to me you will be happy if I shut down CMX, why don't we do that? I offered to and you get a court order that I cant. Then you seek a new court order to do just that. You make zero fucking sense, that's what being dirty liberal is about.

You liberals love to kill unborn babies but you won't go 10 feet near capital punishment lol you are a bunch of screwballs.

Please tell me you want C<X shut down, I owe you no money and we can make a deal.

Otherwise all you will get is a judgment. 50 years if I actually remain in the US, no way I am stating in this looney country.

If you want $600k why do you refuse and make up all this BS that will lead you to a 50 year judgment you can never collect? If you want CMX shut down, tell me.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:28 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I need to terminate my contract w/ Google because they also support the LGTBQ+. I have a religious right. You and this Judge cannot stop that.

You also cannot force me or anyone to exploit their IP publicly. It's art and I do not want my art displayed anymore.

There's a million ways I can fucking shut this shit down, are you serious? You think I won't do it?

If that's all you want to settle, drop the money and ask me to do it. This isn't rocket science.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:24 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Uh yea I don't advise deposing your "key" person who runs CMX channels from claims. When Ron is gone you will lose more videos than you can count.

You own CMX or it could pay you $600k.

Just like trying to demonetize it, you aren't exactly making any business sense. You are cutting off your own foot to spite your hand. Yeah you can do it but you wind up w/ nothing.

I am not fucking doing Ron's job and you cant hire anyone to do it because you don't own CMX do you?

What can the CEO tell you about C<X and it's copyright infringement and other issues, why it needs to be shut down (YouTube violations etc)?

I can do better than that. I can show you.

As I said you have no idea what you are dealing with. If all you want is a judgement and C<X shit down, tell me I will do ASAP. I don't want this crooked company, it's a liability.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:14 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

You want to play by law, we can play by law. I have I got a story for Google and the court about what ComedyMX really is.

You refuse to settle? Lol you are such a moron. You will regret it. CMX will fall.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:12 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Don't think for a moment I will not sign a declaration that ComedyMX are a bunch of copyright infringers. CBS sued them as you claimed CBS was right.

What about the hundreds of Content ID claims and DMCAs they get everyday?

I will testify I believe ComedyMX are copyright infringers and Google needs to demonetize and terminate the channels. I can prove that they are.

You will get NOTHING!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:05 AM

**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think you need to tell in your Depo that he's…terminated. Because he supports LGBTQ+ and to go work for BB.

Let's see how that works out for you and your channels you seem to think you own.

It's such an easy business right? Just like Amazon lol

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:59 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think ComedyMX is a big copyright infringer. Because they get claims every day on hundreds of videos. I think those videos need to be deleted and I also think ComedyMX needs to start paying those people.

What do I know? I am not an attorney and not a PD expert, think they are PD but sounds like I am wrong.

Why am I paying Ron? Why don't you pay him since you claim they are your channels? Judge even said they belong to you. Why don't you tell Google how you own them?

I am NOT keeping someone who supports a terrible sin on my payroll period! Jail does not scare me I told you that. Death does not scare me either. Both scare you. We are very different. Fear keeps you in bondage, I have no fear in case you haven't noticed.

Your Judge can order me to jump off a bride. I won't do it. As for your "channels" they were never yours and never will be.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** you really want to play this game?

FYI I spoke to Ron Hall and he supports the LGBTQ+. I am going to have to fire him. Who is going to run your channels w/ Fraud 512F claims?

Are you? You're going to pay him?

Are you going to get your "God Complex Judge" to order Ron Hall to keep working for me even though he supports LGBTQ+? I can't fire him and have to deal with God as my Judge and not be afraid of this corrupt country?

Or are you going to get your "God Complex" judge to order me to actually work at it? I don't know, I think I am wrong about ALL the claims and those videos ALL need to be deleted.

Do you want to play this game? You will get NOTHING but a Judgment!

I cannot keep paying anyone to keep up w/ daily BS claims, though I think I maybe an infringer. I need to start deleting every video b/c someone makes a claim. On YouTube.

What do I know?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Thursday, November 10, 2022 3:14 AM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: you really want to play this game? |

You want to play by law, we can play by law. I have I got a story for Google and the court about what ComedyMX really is.

You refuse to settle? Lol you are such a moron. You will regret it. CMX will fall.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:12 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Don't think for a moment I will not sign a declaration that ComedyMX are a bunch of copyright infringers. CBS sued them as you claimed CBS was right.

What about the hundreds of Content ID claims and DMCAs they get everyday?

I will testify I believe ComedyMX are copyright infringers and Google needs to demonetize and terminate the channels. I can prove that they are.

You will get NOTHING!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:05 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think you need to tell in your Depo that he's...terminated. Because he supports LGBTQ+ and to go work for BB.

Let's see how that works out for you and your channels you seem to think you own.

It's such an easy business right? Just like Amazon lol

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:59 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think ComedyMX is a big copyright infringer. Because they get claims every day on hundreds of videos. I think those videos need to be deleted and I also think ComedyMX needs to start paying those people.

What do I know? I am not an attorney and not a PD expert, think they are PD but sounds like I am wrong.

Why am I paying Ron? Why don't you pay him since you claim they are your channels? Judge even said they belong to you. Why don't you tell Google how you own them?

I am NOT keeping someone who supports a terrible sin on my payroll period! Jail does not scare me I told you that. Death does not scare me either. Both scare you. We are very different. Fear keeps you in bondage, I have no fear in case you haven't noticed.

Your Judge can order me to jump off a bride. I won't do it. As for your "channels" they were never yours and never will be.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** you really want to play this game?

FYI I spoke to Ron Hall and he supports the LGBTQ+. I am going to have to fire him. Who is going to run your channels w/ Fraud 512F claims?

Are you? You're going to pay him?

Are you going to get your "God Complex Judge" to order Ron Hall to keep working for me even though he supports LGBTQ+? I can't fire him and have to deal with God as my Judge and not be afraid of this corrupt country?

Or are you going to get your "God Complex" judge to order me to actually work at it? I don't know, I think I am wrong about ALL the claims and those videos ALL need to be deleted.

Do you want to play this game? You will get NOTHING but a Judgment!

I cannot keep paying anyone to keep up w/ daily BS claims, though I think I maybe an infringer. I need to start deleting every video b/c someone makes a claim. On YouTube.

What do I know?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Thursday, November 10, 2022 3:47 AM |
| **To:** | Milord Keshishian |
| **Subject:** | RE: you really want to play this game? |

Honestly, It sounds to me you will be happy if I shut down CMX, why don't we do that? I offered to and you get a court order that I cant. Then you seek a new court order to do just that. You make zero fucking sense, that's what being dirty liberal is about.

You liberals love to kill unborn babies but you won't go 10 feet near capital punishment lol you are a bunch of screwballs.

Please tell me you want C<X shut down, I owe you no money and we can make a deal.

Otherwise all you will get is a judgment. 50 years if I actually remain in the US, no way I am stating in this looney country.

If you want $600k why do you refuse and make up all this BS that will lead you to a 50 year judgment you can never collect? If you want CMX shut down, tell me.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:28 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I need to terminate my contract w/ Google because they also support the LGTBQ+. I have a religious right. You and this Judge cannot stop that.

You also cannot force me or anyone to exploit their IP publicly. It's art and I do not want my art displayed anymore.

There's a million ways I can fucking shut this shit down, are you serious? You think I won't do it?

If that's all you want to settle, drop the money and ask me to do it. This isn't rocket science.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:24 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Uh yea I don't advise deposing your "key" person who runs CMX channels from claims. When Ron is gone you will lose more videos than you can count.

You own CMX or it could pay you $600k.

Just like trying to demonetize it, you aren't exactly making any business sense. You are cutting off your own foot to spite your hand. Yeah you can do it but you wind up w/ nothing.

I am not fucking doing Ron's job and you cant hire anyone to do it because you don't own CMX do you?

1

What can the CEO tell you about C<X and it's copyright infringement and other issues, why it needs to be shut down (YouTube violations etc)?

I can do better than that. I can show you.

As I said you have no idea what you are dealing with. If all you want is a judgement and C<X shit down, tell me I will do ASAP. I don't want this crooked company, it's a liability.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:14 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

You want to play by law, we can play by law. I have I got a story for Google and the court about what ComedyMX really is.

You refuse to settle? Lol you are such a moron. You will regret it. CMX will fall.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:12 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

Don't think for a moment I will not sign a declaration that ComedyMX are a bunch of copyright infringers. CBS sued them as you claimed CBS was right.

What about the hundreds of Content ID claims and DMCAs they get everyday?

I will testify I believe ComedyMX are copyright infringers and Google needs to demonetize and terminate the channels. I can prove that they are.

You will get NOTHING!

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 1:05 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think you need to tell in your Depo that he's...terminated. Because he supports LGBTQ+ and to go work for BB.

Let's see how that works out for you and your channels you seem to think you own.

It's such an easy business right? Just like Amazon lol

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:59 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** RE: you really want to play this game?

I think ComedyMX is a big copyright infringer. Because they get claims every day on hundreds of videos. I think those videos need to be deleted and I also think ComedyMX needs to start paying those people.

What do I know? I am not an attorney and not a PD expert, think they are PD but sounds like I am wrong.

Why am I paying Ron? Why don't you pay him since you claim they are your channels? Judge even said they belong to you. Why don't you tell Google how you own them?

I am NOT keeping someone who supports a terrible sin on my payroll period! Jail does not scare me I told you that. Death does not scare me either. Both scare you. We are very different. Fear keeps you in bondage, I have no fear in case you haven't noticed.

Your Judge can order me to jump off a bride. I won't do it. As for your "channels" they were never yours and never will be.

**From:** Edward Heldman III <eheldman3@yahoo.com>
**Sent:** Thursday, November 10, 2022 12:50 AM
**To:** 'milord@milordlaw.com' <milord@milordlaw.com>
**Subject:** you really want to play this game?

FYI I spoke to Ron Hall and he supports the LGBTQ+. I am going to have to fire him. Who is going to run your channels w/ Fraud 512F claims?

Are you? You're going to pay him?

Are you going to get your "God Complex Judge" to order Ron Hall to keep working for me even though he supports LGBTQ+? I can't fire him and have to deal with God as my Judge and not be afraid of this corrupt country?

Or are you going to get your "God Complex" judge to order me to actually work at it? I don't know, I think I am wrong about ALL the claims and those videos ALL need to be deleted.

Do you want to play this game? You will get NOTHING but a Judgment!

I cannot keep paying anyone to keep up w/ daily BS claims, though I think I maybe an infringer. I need to start deleting every video b/c someone makes a claim. On YouTube.

What do I know?

| | |
|---|---|
| **From:** | Edward Heldman III <eheldman3@yahoo.com> |
| **Sent:** | Monday, November 14, 2022 4:03 PM |
| **To:** | Milord Keshishian |
| **Subject:** | Standish Family History |

## Standish Name Meaning

English (Lancashire and Yorkshire): habitational name from Standish (Lancashire now part of Greater Manchester) from Old English *stān* 'stone rock' + *edisc* 'enclosure enclosed park'. Standish (Gloucestershire) does not appear to have contributed towards the surname.

Anti-Semitic. As I said Fischer (Jewish) has been bias but decent. This Magistrate who's a wannabe district judge clearly hates Jews just like YOU and Nazi German Justice. We know Justice is very German, blond, blur eyes and fat!

**EXHIBIT F**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, Plaintiff, <br><br> v. <br><br> EDWARD HELDMAN III, et al., Defendants. | CV 20-5581 DSF (GJSx) <br><br> Order DENYING Application for Order Continuing Hearing (Dkt. 332) |

Defense counsel[1] contends that the Court is aware that Mr. Heldman suffers from a severe alcohol abuse problem.  But the Court is "aware" only that Mr. Heldman <u>contends</u> that he suffers from an alcohol abuse problem.  Mr. Heldman has never provided any evidence of his problem or his efforts at rehabilitation.  Even if the Court were to accept the unsupported representation, there is no evidence that this issue prevents him from effectively communicating with his counsel.[2] Evidence provided by Plaintiff's counsel in opposition to the motion makes clear that Mr. Heldman is well able to communicate when he wants to do so.

In any event, these alleged issues are not a sufficient reason for the Court to continue the hearing on the upcoming motion.  Any opposition

---

[1] Several of Mr. Heldman's counsel have recently withdrawn from this case.

[2] Though defense counsel apparently believes Mr. Heldman's "mental state" has made it impossible to effectively communicate with him," he does not appear to have the expertise to draw that conclusion.

to the motion must be filed no later than noon on November 14, 2022. Any reply is due by November 21, 2022.

IT IS SO ORDERED.

Date: November 9, 2022

Dale S. Fischer
United States District Judge

**EXHIBIT G**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05581-DSF-GJS | Date | July 18, 2022 |
|---|---|---|---|
| Title | Beyond Blond Productions, LLC v. Edward Heldman III et al | | |

| Present: | Hon. Gail J. Standish, United States Magistrate Judge |
|---|---|

| Elisa Quintero | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None present | None present |

**Proceedings:**     ORDER (IN CHAMBERS) **GRANTING IN PART** PLAINTIFF'S MOTION FOR AN CONTEMPT [249] AND REQUIRING USE OF SPECIAL MASTER AND IT FORENSIC SPECIALIST

On June 23, 2022, the Court held a hearing on Plaintiff's Motion for Contempt, which alleged, inter alia, that Defendants had not complied with the requirements of the Court's previous Order regarding certain discovery. The Court's Previous Discovery Order [Dkt. 232], required all responsive document to be produced by April 29, 2022, at 5 p.m. The Court also found that Defendants' failures to produce documents and otherwise engage in discovery, and the complete lack of merit in Defendants opposition to Plaintiff's motion to compel, warranted the shifting of attorneys' fees. The Court made an award that is not the subject of Plaintiff's present motion to compel.

//
//
//
//
//
//

Initials of Preparer

| 00:00 |
|---|
| eq |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05581-DSF-GJS | Date | July 18, 2022 |
|---|---|---|---|
| Title | Beyond Blond Productions, LLC v. Edward Heldman III et al | | |

In the Court's Prior Discovery Order, the Court also noted and ordered as follows:

- There are many instances in which Defendant's original responses to document requests indicated that certain categories of documents would be produced. Later correspondence from Defendant's counsel updating Defendant's responses indicated that no responsive documents exist, including for categories of documents for which the Court has a difficult time believing that responsive documents never existed. Thus, Defendant must submit a declaration under penalty of perjury explaining, for categories for which there are allegedly no document in existence: (1) when he first searched for responsive documents, (2) where he searched for such documents, and (3) whether responsive documents existed at an earlier time.[1] The declaration, which must be signed by Defendant, not counsel, is due on or before May 6, 2022.

- The Court finds that all objections are waived except for those relating to the attorney-client and attorney work product privileges. Documents will be produced subject to the previously entered Protective Order, which provides sufficient protection for confidential documents. A privilege log for any documents withheld under the attorney-client privilege and/or work product doctrine must be served by 5 p.m. on May 6, 2022. Defendant need not log privileged correspondence or work product created after the filing of the lawsuit. Defendant's privilege log must contain sufficient foundational information for the Court to determine whether the stated privilege applied in the event of a challenge to a particular entry by Plaintiff.

Plaintiff's present motion to compel provides uncontroverted evidence that Defendants have willfully violated the Court prior discovery order by not producing the vast majority of responsive documents or any privilege log. Nor did Defendants provide the declaration required by the Prior Discovery Order.

Plaintiffs' Motion also details heinous statements made by defendant Heldman to and about Plaintiff's Counsel as well as certain statements about both judicial officers assigned to this matter. The Court need not address specifically these statements, as they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05581-DSF-GJS | Date | July 18, 2022 |
|----------|------------------------|------|----------------|
| Title | Beyond Blond Productions, LLC v. Edward Heldman III et al | | |

were also the subject of motion practice before the District Judge and consequent orders. [Dkt. 272 (District Judge's Order).]

For the reasons set forth in detail at the hearing on Plaintiff's Motion, the Court finds and orders the following:

1. Because Defendants did not produce a privilege log, ***all privileges are waived***. The Court previously held that Defendants waived privilege except those related to the present litigation.  Given Defendants failure to comply with any of the Court's prior discovery rulings, including timely production of any documents or preparation of a privilege log, the Court now holds that all privileges – including for work product related to litigation – have been waived. Defendants are to produce all requested documents without redaction within two (2) weeks of this order.

2. Plaintiff's Request that affirmative defenses 1 – 9 be stricken is denied without prejudice.  The District Judge must approve any such sanction.  Plaintiff's may refile this request, seeking a recommendation from the Magistrate Judge to the District Judge or directly with the District Judge, upon a showing of prejudice at a later date.

3. At the hearing, the Court ordered the parties to provide a selection of proposed, agreed to Special Masters, because the Court orders that any depositions of defendant Heldman be overseen by a Special Master.  The parties agreed that any of the retired judicial officers listed below would be acceptable to both sides.  The Court therefore orders that the parties contact one or more of the following to obtain their availability.  The deposition or depositions of defendant Heldman will be conducted via Zoom (given the threats made by Heldman to Plaintiff's counsel) and will be overseen by one of the following retired judicial officers.  Defendants are to pay for the use of the Special Master.  Defendants must provide a retainer to the Special Master in the amount

| | 00:00 |
|---|---|
| **Initials of Preparer** | eq |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05581-DSF-GJS | Date | July 18, 2022 |
|---|---|---|---|
| Title | Beyond Blond Productions, LLC v. Edward Heldman III et al | | |

of one full day at the rate of the Special Master chosen. Payment of the retainer is to be made before the deposition is conducted.

    a. Hon. Patrick J Walsh (Ret.): https://signatureresolution.com/neutral-CPT/hon-patrick-j-walsh-ret/

    b. Hon. Suzanne H. Segal (Ret.): https://signatureresolution.com/neutral-CPT/hon-suzanne-h-segal-ret/

    c. Hon. Elizabeth D. Laporte (Ret.): https://www.jamsadr.com/laporte/

    d. Hon. James C. Francis IV (Ret.): https://www.jamsadr.com/francis/

4. At the Zoom deposition, both defendant Heldman and his counsel must be clearly visible to prevent any coaching or other improper behavior.

5. The Court also orders that Defendants retain, at their expense, an IT Forensics Specialist to conduct the forensic analysis discussed on the record at the hearing related to imaging and analysis of defendant Heldman's computer, a removable hard drive, an iPhone, and an iPad. The parties agree that the specialists at either of the following websites would be appropriate for such an analysis: www.innovativedriven.com www.idiscoverglobal.com. Plaintiff may select from either of the two specialists. Defendants are to provide the selected specialist with a $5,000 retainer by no later than one week after the date of this order, and additionally must provide the relevant electronic devices to be imaged within 3 business days after that at a date amenable to the IT specialist.

    IT IS SO ORDERED.

cc: District Judge

| | 00:00 |
|---|---|
| Initials of Preparer | eq |