## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>COMEDYMX, LLC*, et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-11181 (CTG)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 32, 33** |

### <u>MEMORANDUM OPINION</u>

The debtors in these cases assert that they hold trademarks imprinted on various classic Looney Tunes cartoons.[1]  Their business is to make these cartoons available on video streaming platforms, such as YouTube.  The debtors derive revenue based on the viewership of advertisements on the platform.  These bankruptcy cases, filed under subchapter V of the Bankruptcy Code, were precipitated by litigation arising out of a dispute the debtors have with a business rival, Beyond Blond Productions.[2]

While the debtors' underlying business is based on the distribution of classic cartoons, the dispute that is now before this Court is anything but funny.  The issue is that the debtors' principal, Edward Heldman III, who is the owner of the debtors and their only officer and employee, has sent emails that make it abundantly clear that he cannot serve in a fiduciary capacity to this bankruptcy estate.  Beyond Blond has moved (a) to de-designate the case to a regular chapter 11 and to appoint a chapter 11 trustee, or alternatively, (b) to remove the debtors as debtors in possession

---

[1] Debtors ComedyMX, Inc. and ComedyMX, LLC are referred to collectively as the "debtors."

[2] Beyond Blond Productions, LLC is referred to as "Beyond Blond."

under § 1185 and to authorize the subchapter V trustee, under § 1183(b)(5), to operate the debtors' business.[3]   The U.S. Trustee has moved (a) to remove the debtor in possession under § 1185 or, alternatively, (b) to dismiss the cases "for cause" under § 1112(b).

For the reasons described below, the Court concludes that the question whether it has authority to de-designate the cases filed under subchapter V to regular chapter 11 cases (which would permit the appointment of a regular chapter 11 trustee with the full range of trustee powers, including the authority to file a plan) to be a close one.  In the end, the Court need not resolve that question, because even if the Court had that authority, it would not exercise it under the circumstances of this case.  The Court will, however, remove the debtor in possession under § 1185, which removal operates to expand the subchapter V trustee's powers under § 1183(b)(5).  That relief obviates the need to consider the U.S. Trustee's alternative request to dismiss the bankruptcy cases.

## Factual and Procedural Background

The debtors and Heldman are parties to an action brought against them in the U.S. District Court for the Central District of California by Beyond Blond.[4]   The gravamen of Beyond Blond's complaint was that Heldman sent fraudulent "takedown notices" under the Digital Millennium Copyright Act[5] to Beyond Blond's streaming

---

[3] D.I. 32.

[4] *See Beyond Blond Productions v. Heldman, et al.*, C.D. Cal. No. 2:20-cv-05581.

[5] Pub. Law 105-304 (1998), 112 Stat. 2860.

partners, causing Beyond Blond's content to be removed from those streaming partners' sites.

The district court in that lawsuit entered a preliminary injunction directing Heldman and the debtors to withdraw the takedown notices, an order sanctioning the defendants for failing to comply with the preliminary injunction, and an order that both enjoined Heldman from sending threatening or harassing emails to Beyond Blond's principal or its outside counsel and from "transferring or encumbering any assets."

These bankruptcy cases were filed on November 14, 2022. Even after the petition date, however, Heldman has sent dozens of emails to Beyond Blond's principal and outside counsel. The emails are repugnant and undoubtedly violate the district court's injunction. The most striking features of Heldman's communications are their vulgarity, racism, misogyny, and homophobia. That much is plain from the emails themselves, which are part of the record before this Court. The Court will not undertake to persuade the reader of the truth of that assertion by quoting the emails in this Memorandum Opinion, aside from those portions that bear directly on the present motions. There are, however, two aspects of these emails that are important to the motions now before this Court. *First*, Heldman repeatedly threatens to "demonetize" the debtors, meaning that he will take action that would entitle the debtors' streaming partners to stop paying the debtors for their content, thus causing the debtors' revenue to dry up. *Second*, Heldman trumpets his willingness to defy

court orders, telling Beyond Blond's principal and outside counsel that they "cannot defeat someone who doesn't give a damn about the law."

While the petitions were filed on November 14, 2022, the debtors did not file motions seeking substantive first-day relief until December 5, 2022, when they moved for authority to maintain their existing bank accounts[6] and to use cash collateral.[7] At the debtors' request, those motions were heard on December 9, 2022.

Beyond Blond objected to both motions,[8] not on the ground that it had an interest in the cash collateral that warranted protection, but rather on the ground that Heldman was not fit to manage the debtors' cash and that the relief sought would violate the injunction entered by the district court in California. The U.S. Trustee also objected to both motions. It argued that the request to use cash collateral should be denied because there was no perfected security interest in the debtors' cash that required adequate protection and that the debtors failed to address the effect of the California district court's injunction.[9] The U.S. Trustee objected to the cash management motion on the ground that it would be inappropriate for Heldman to have access to the debtors' cash.[10]

At the first-day hearing, the Court observed that nothing in the relief sought would or could operate to override the district court's injunction. Property owned by

---

[6] D.I. 15.

[7] D.I. 16.

[8] D.I. 23. The opposition was supported by a declaration (D.I. 24) that included various of the California district court orders and Heldman's emails.

[9] D.I. 25.

[10] D.I. 26.

a debtor prepetition comes into the bankruptcy estate subject to whatever restrictions or limitations exist under non-bankruptcy law.[11]  The Court accordingly was prepared to grant the debtors some (but not all) of the first-day relief that it sought.[12]  The Court noted, however, that to the extent Beyond Blond and the U.S. Trustee had concerns about the case proceeding with the debtors' current management remaining in possession, they would need to seek appropriate relief under the Bankruptcy Code rather than oppose the debtors' ordinary efforts to advance the bankruptcy case. Under the circumstances, the Court directed that the matter proceed on a highly expedited schedule.  The Court ordered that any such motion be filed by December 12, 2022 and that responses be filed by December 13, 2022.

The Court held an evidentiary hearing on the motions on December 14, 2022. At that hearing, the debtors presented the testimony of Raymond Pinglora, who had also served as the debtors' first-day declarant.  Pinglora is Heldman's cousin.  While he is not an officer or employee of the debtors, Pinglora testified that his company provided accounting services to the debtors and that he was personally engaged to serve, on a contract basis, as the business manager.

---

[11] *See Chicago Board of Trade v. Johnson*, 264 U.S. 1 (1924); *Mission Product Holdings, Inc. v. Tempnology*, 139 S. Ct. 1652, 1663 (2019) ("The estate cannot possess anything more than the debtor itself did outside bankruptcy.")

[12] The Court granted an unopposed motion to have the two debtors' cases jointly administered.  D.I. 28.  While the Court indicated that it would permit limited use of cash collateral, the parties have not submitted an order reflecting that ruling, presumably concluding that it would be more appropriate to await the resolution of the present motions before taking further steps to advance the case.

Pinglora testified that he had taken steps since the first-day hearing (when he had been questioned on this issue) to have the debtors' bank restrict Heldman's ability to draw on the companies' bank account. While he did not dispute that Heldman, as the debtors' owner and sole officer, would have the corporate authority to remove whatever restrictions he had imposed, Pingolora testified that Heldman played only a "creative" role with the debtors and lacked the practical or managerial skills necessary to access the debtors' bank account. Pinglora made no effort to defend the emails that Heldman had sent. Indeed, at the first-day hearing, Pinglora testified that he agreed that the emails were harassing and thus violated the California district court's order. At the hearing on the present motions, Pinglora added that he believed that Heldman's conduct was attributed to substance abuse. Importantly, Pinglora did not claim that he would have any ability to prevent Heldman from effectively sabotaging the debtors' business by following through on his threat to "demonetize" the companies' channels.

Beyond Blond presented the testimony of Milford Keshishian, the company's litigation counsel in the California district court litigation. Keshishian described the emails he had received from Heldman. Those emails, as well as the various orders of the California district court, were admitted into evidence.

## Jurisdiction

The Court has subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). As a case within the district court's bankruptcy jurisdiction, it has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing

order of reference.[13]  The parties' motions for removal under § 1185(a), the trustee's

motion to dismiss under § 1112(b), and Beyond's motion for relief under Federal Rule

of Bankruptcy Procedure 1009(a) are core proceedings under § 157(b)(2) which may

be heard and decided in this Court.

### Analysis

**I.     The question whether the Court has the power to remove the debtors'
small business designation is a close one, which the Court need not
resolve in light of its determination that it would not, in any event,
grant such relief here.**

Certain small business debtors may elect to reorganize under subchapter V of

chapter 11, a proceeding intended to be simpler and less expensive than a traditional

chapter 11.  This subchapter "provides a streamed-down procedure that allows the

self-employed to hold on to their small businesses."[14]  Only the debtor may file a plan

of reorganization,[15] and because § 1104 does not apply in a case filed under subchapter

V,[16] the Court may not appoint a trustee or an examiner.  Section 1185 permits a

court to remove the debtor from possession on a showing of cause, in which case

(under § 1183(b)(5)) the subchapter V trustee is empowered to operate the debtor's

business.  But, unlike a regular chapter 11 trustee, this action does not permit any

party other than the debtor to propose a plan.  And perhaps most importantly,

subchapter V redefines "fair and equitable" such that a plan may be confirmed so long

---

[13] Amended Standing Order of Reference from the United States District Court for the
District of Delaware, dated Feb. 29, 2012.

[14] Douglas G. Baird, *The Elements of Bankruptcy* 20 (7th ed. 2022).

[15] 11 U.S.C. § 1189(a).

[16] *Id.* § 1181(a).

as it commits the debtor's projected disposable income over the applicable plan period (three or five years) to repay creditors.[17]  The requirement that a plan satisfy absolute priority as to any rejecting class of creditors, otherwise applicable in chapter 11 by virtue of §§ 1129(a)(8) and 1129(b), does not apply under subchapter V.[18]

There is no dispute that the debtors meet the definition in § 1182(1) and are eligible to elect to proceed under subchapter V under § 103(i).  Beyond Blond, however, seeks to redesignate the case as a traditional chapter 11 under Federal Rule of Bankruptcy Procedure 1009(a), which would therefore permit it to seek the appointment of a chapter 11 trustee and strip the debtors of the special protections afforded to them under subchapter V.

Rule 1009(a) states that

"[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. . . On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended. . ."

Neither the Bankruptcy Code nor the Bankruptcy Rules, however, provide a standard for assessing a motion to amend a bankruptcy petition.  As Judge Gunn noted in her opinion in *In re National Small Business Alliance*, "nothing in Subchapter V discusses the revocation of election to proceed thereunder by the Court or any other party."[19]

---

[17] *Id.* § 1191(c).

[18] *See also id.* § 1129(b).

[19] 642 B.R. 345, 348 (D.D.C. 2022).

As Judge Gunn observed, a number of cases authorized, in the immediate wake of the enactment of subchapter V, debtors to amend their petitions under Rule 1009(a) in order to take advantage of the new provision.[20] Judge Gunn fairly pointed out that this principle, combined with the language of the Rule quoted above permitting any party in interest to file such a motion to amend a petition, might be read to suggest that a case may be de-designated upon a proper showing. Indeed, the argument can be taken a step further. Because Rule 1009(a) states that a petition may be amended "on a motion of a party in interest," while Rule 1009(b) permits the statement of intention to be amended only by "the debtor," one might draw an inference that the Advisory Committee, at least, made an express determination to permit parties in interest other than just the debtor move the Court to amend a bankruptcy petition.

If the text of the Bankruptcy Code squarely addressed the question of de-designation one way or the other, that would be the beginning and end of the matter. But it does not, and one is therefore left to draw an inference from the sources that are available. In addition to the text of Rule 1009, there are also sound reasons of policy to support the conclusion reached in *National Small Business Alliance*. Consider a debtor (such as, perhaps, the one in this case) that might well have going concern value that would likely be lost either in a chapter 11 liquidation or if the

---

[20] As one court noted, while it is true that the debtor does not have an absolute right to convert their case, "'[c]onversion' is a misnomer where, as here, the Debtors do not seek to convert the Cases to cases under another chapter of the Bankruptcy Code but, rather, seek authority to remain in Chapter 11 and amend their petitions to elect to proceed under Subchapter V." *In re Peak Serum*, 623 B.R. 609, 616 (Bankr. D. Colo. 2020).

bankruptcy case were dismissed.  If such a debtor were unwilling or unable to propose a confirmable plan, then the only way to preserve that value would be to de-designate the case, which would allow another party in interest (such as a chapter 11 trustee) to propose a plan.  But absent the authority to de-designate the case, a court's only options, under § 1112(b) of the Bankruptcy Code, would be to convert the case to one under chapter 7 or dismiss the case, in which case the value would be at risk of being destroyed.  One might conclude that, in the absence of contrary statutory text, any ambiguity in the Bankruptcy Code should be construed to avoid a result that is so contrary to established bankruptcy policy.

There is, however, a serious counterargument.  Under § 103(i), the decision to proceed under subchapter V is within the exclusive province of the debtor.[21]  There can be no suggestion that a creditor may move a court to amend a petition to designate a case as one under subchapter V over a debtor's objection.  So notwithstanding the language of Rule 1009(a), it cannot be argued that parties in interest have *carte blanche* to file motions seeking to move debtors in or out of subchapter V as they see fit.  In addition, Rule 1020, which establishes the procedure for a debtor to designate a case under subchapter V and for a party in interest to object to such a designation, can be read to imply that the debtor's determination to proceed under subchapter V shall be controlling unless and until the Court

---

[21] 11 U.S.C. § 103(i) ("Subchapter V of chapter 11 of this title applies only in a case under chapter 11 in which a debtor (as defined in section 1182) elects that subchapter V of chapter 11 shall apply.)

determines that the debtor is statutorily ineligible.[22]  Moreover, there is also reason to be concerned that the argument from Rule 1009 proves too much.  If a creditor may move under Rule 1009 to amend a debtor's position to de-designate the case as a subchapter V, might a creditor seek to circumvent the standards for conversion from one chapter to another by seeking to move to amend the petition?  The answer to that question must be no, which might suggest that Rule 1009 was never intended to be such a source of substantive authority to affect the basic contours of a bankruptcy case.  And finally, a case can be made from the text of the statute itself that de-designating a subchapter V case so that another party in interest may propose a plan or so that a trustee may be appointed under § 1104 would be an improper end run around the contrary provisions contained in subchapter V itself.

In the end, the Court need not resolve this question, because even if the Court does have the authority to de-designate the case from subchapter V to a regular chapter 11 case, it would not exercise that authority in this case.  Even is such an authority exists, the Court is persuaded (in light of the statutory contemplation that the decision whether to proceed under subchapter V would typically be committed to the debtor's discretion) that any authority to override the debtor's judgment ought to be exercised only as a last resort, where no other mechanism is available to achieve the objectives of chapter 11.  As offensive and deplorable as the Court finds Heldman's emails, the debtors should not lose the benefits of subchapter V because their

---

[22] Fed. R. Bankr. P. 1020(a) ("the status of the case as a small business case shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding the debtor's statement is incorrect").

principal sent hateful or offensive emails.  Rather, even if the Court were to apply the principles set out in *National Small Business Alliance*, it would be appropriate to give the debtors an opportunity to proceed under subchapter V.  Unlike *National Small Business Alliance*, this case is barely at its inception.  The debtors either will or will not be able to propose a plan of reorganization that is capable of being confirmed.  But under the circumstances of this case, the Court does not believe, if it has the power to de-designate at all, that it would be appropriate to exercise that authority before such efforts are exhausted.

## II.   Cause has been shown to order that the debtors shall not be debtors in possession.

The Court is persuaded, however, that cause has been shown to remove the debtors from possession.  Section 1185(a) states that on "request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case."[23]  The statutory use of the word "including," of course, is "not limiting."[24]

In this Court's view, a manifest demonstration that management is unable to conduct itself as an appropriate fiduciary for the bankruptcy estate is also "cause" to dispossess the debtor under § 1185.  Section 1184 makes plain that a debtor in possession in a subchapter V case is required to "perform [the] function and duties …

---

[23] 11 U.S.C. § 1185(a).

[24] 11 U.S.C. § 102(3).

of a trustee serving in a case under this chapter." In addition to the fiduciary duties imposed by state law, it is implicit in the term "trustee," which is drawn from the common law of trusts, that these duties include managing the debtor's business as a fiduciary to the estate and its stakeholders.[25] Based on the record developed at the evidentiary hearing, the Court finds that the debtors in possession are poorly suited to fulfill that statutory obligation.

Despite Pinglora's best efforts, the fact remains that Heldman is the 100 percent owner and sole officer and employee of the debtors. Even accepting Pinglora's view that Heldman lacks the practical and managerial skills to remove funds from the debtors' account, even Pinglora acknowledged that he would have no way to stop Heldman from making good on his threats to destroy the debtors' business for the purpose of harming its creditors. And Heldman's boast that he "doesn't give a damn about the law," coupled with his open defiance of the injunctions entered by the California district court, lead this Court to conclude that the statutory purposes of chapter 11 cannot be fulfilled with this debtor remaining in possession.

Subchapter V also provides a specific means to fill the void when a debtor is dispossessed. Section 1183(b)(5) states that the subchapter V trustee shall, "if the debtor ceases to be a debtor in possession … be authorized to operate the business of the debtor."

---

[25] *See generally Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952) (statutory reference to "long-established and familiar" common law principles should be read to conform with those principles).

Significantly, however, these duties do not include the authority to file a plan, which authority is given only to the debtor.[26]  Accordingly, with the subchapter V trustee managing the debtors' business affairs and "facilitat[ing] the development of a consensual plan of reorganization,"[27] the debtors will retain the right to file a plan. The debtors either will or will not be able to do so.  But applying the reasoning of *National Small Business Alliance*, the Court concludes that those efforts should be exhausted before the Court considers more drastic measures.

## Conclusion

For the foregoing reasons, Beyond Blond's motion to de-designate the case to a traditional chapter 11 will be denied; Beyond Blond's and the U.S. Trustee's motions to remove the debtors in possession under § 1185 will be granted, and the U.S. Trustee's motion to dismiss the case will be dismissed as moot.  The Court will enter an order, consistent with the form of order submitted by the U.S. Trustee under certification of counsel,[28] so providing.

Dated: December 16, 2022

_____

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

---

[26] 11 U.S.C. 1189(a).

[27] *Id.* § 1183(b)(7).

[28] D.I. 43.

14